DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Gary McEnteer, appeals the Summit County Court of Common Pleas' award of damages on a default judgment. Appellees, Stuart Moss and Marketing and Creative Solutions, Inc., cross-appealed. We affirm.
 I. {¶ 2} Mr. Moss fraudulently induced Mr. McEnteer to commit $70,000 to a joint venture, by way of certain forged documents and false representations. Mr. McEnteer sued, claiming conversion, breach of fiduciary duty, conspiracy, fraudulent inducement and fraudulent misrepresentation. In his complaint, Mr. McEnteer sought at least $100,000 in compensatory damages and $500,000 in punitive damages. The defendants failed to answer within 28 days.
 {¶ 3} Mr. McEnteer moved for default judgment, and appended an affidavit which itemized and tabulated the damages. The trial court granted the default judgment and awarded $81,375.23 as compensatory damages, but did not award punitive damages or attorney fees. The defendants immediately moved to vacate the default judgment, pursuant to Civ.R. 60(B). The trial court denied the motion.
 {¶ 4} Both parties appealed, and this Court consolidated the appeals. Mr. McEnteer was designated the appellant, and asserted a single assignment of error. Mr. Moss was designated the appellee/cross-appellant and asserted five cross-assignments of error. As each of Mr. Moss' assigned errors actually address only the award of default judgment, they will be addressed together.
 II. A. Assignment of Error
"The trial court erred by failing to include an award of punitive damages and attorney's fees in the default judgment entered in favor of appellant, which judgment is in that respect against the manifest weight of the evidence."
 {¶ 5} Mr. McEnteer alleges that the trial court erred by failing to award punitive damages and attorney fees, insisting that punitive damages are necessary to punish the appellees for their conduct. Specifically, Mr. McEnteer offers the statement that "it is established that [Mr. McEnteer] is entitled to recover some punitive damages from Appellees and the only question is: was the amount awarded by the trial court sufficient?" We disagree.
 {¶ 6} As this Court has explained, the damage award in a default judgment is a separate issue, and these two issues involve a split standard of review:
"A trial court's decision to grant a motion for default judgment is reviewed under an abuse of discretion standard. Unlike the initial decision to grant a default judgment, however, the determination of the kind and maximum amount of damages that may be awarded is not committed to the discretion of the trial court, but is subject to the mandates of Civ.R. 55(C) and Civ.R. 54(C). * * * Therefore, the question of whether a trial court's grant of default judgment complies with Civ. R. 55(C) and Civ. R. 54(C) is one of law, which we review de novo." (Internal citations omitted.) Natl. City Bank v. Shuman, 9th Dist. No. 21484, 2003-Ohio-6116, at ¶ 6.
Thus, we will proceed with a de novo review of "the kind and maximum amount of damages that may be awarded." Id. But, see, White OakCommunities, Inc. v. Russell (Nov. 9, 1999), 10th Dist. No. 98AP-1563, at *7 ("Absent an abuse of discretion, the trial court's ruling on punitive damages will be upheld."). Meanwhile, the grant or denial of default judgment is reviewed for an abuse of discretion. Natl. City at ¶ 6. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. An appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 7} As support for his argument that he is "entitled" to punitive damages, Mr. McEnteer relies almost entirely on State Farm MutualAutomobile Insurance Company v. Campbell (2003), 538 U.S. 408,155 L.Ed.2d 585, and presents a thorough analysis thereunder. However,State Farm, as progeny of BMW of North America v. Gore (1996),517 U.S. 559, 134 L.Ed.2d 809, is inapplicable to the case at hand, as those cases established due process prohibitions and limitations on excessive punitive damages awards. As no punitive damages were awarded in the present case, no due process concerns are implicated, and an analysis conducted under State Farm and BMW would be both inapplicable and misleading.
 {¶ 8} Rather, under the de novo standard of review, we consider the basis for imposing punitive damages, which requires a finding of actual malice:
"Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis in original.) Preston v. Murty
(1987), 32 Ohio St.3d 334, syllabus.
Mr. McEnteer argues that the second prong supports his position; that Mr. Moss' fraudulent inducement represents "a great probability of causing substantial harm." However, to meet this requirement, "something more than the mere commission of a tort is always required." (Internal quotations and edits omitted.) Edmondson v. Steelman (1992),87 Ohio App.3d 455, 460. See, also, Estate of Schmidt v. Derenia,158 Ohio App.3d 738, 2004-Ohio-5431, at ¶¶ 1125 (considering defendant's subjective motivation).
 {¶ 9} Specific to a claim of fraud, the law is well settled that mere commission of fraud is not enough; the fraud must be egregious:
"In each case of alleged fraud the plaintiff, in order to be awarded punitive damages, must establish not only the elements of the tort [of fraud] itself but, in addition, must either show that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." Charles R. CombsTrucking, Inc. v. Internatl. Harvester Co. (1984), 12 Ohio St.3d 241, paragraph three of the syllabus.
Therefore, contrary to Mr. McEnteer's argument, the mere existence of fraud in this commercial transaction, even in falsified documents, is not enough on its own to support a punitive damages award. See Logsdon v.Graham Ford Co. (1978), 54 Ohio St.2d 336, 340 (fraud is not made egregious just by a salesman lying about a truck being new, even in falsified documents); Guest v. Metker (Apr. 30, 1990), 5th Dist. No. CA-7985, at *10 (an "arm's length transaction" tends to refute the "behavior necessary to ring the punitive damages bell"). See, also, Pettav. Clarke (Jan. 15, 1997), 9th Dist. No. 96CA006327, at *18-20; Am.Indoor Soccer Assn., Inc. v. Capital Dist. Sports Ent., Inc. (C.A.6, Aug. 22, 1995), No. 93-4346, *5-6; Anthony v. Carrier (Aug. 1, 1977), 7th Dist. No. 76 CA 34, at *12.
 {¶ 10} When considered in relation to the above cited cases, we find that Mr. McEnteer has failed to demonstrate, or even suggest, that the fraud in this case is particularly egregious. It did not involve physical harm or any threat to health or safety; it did not involve a particularly vulnerable or susceptible victim or even a consumer transaction; and it did not involve any pattern of repeat conduct. We conclude that the law does not necessarily "entitle" Mr. McEnteer to punitive damages, nor has he established any right to such an award in the present case.
 {¶ 11} Finally, as a collateral argument, Mr. McEnteer urges that the decision should be remanded due to the trial court's failure to hold an evidentiary hearing on the damages issue. However, "it is within the discretion of the trial court to determine whether a hearing to elicit further evidence is required to support a claim against a defaulting defendant." Buckeye Supply Co. v. Northeast Drilling Co. (1985),24 Ohio App.3d 134, paragraph two of the syllabus. Therefore, this argument is without merit and the assignment of error is overruled.
 B. First Cross-Assignment of Error
"The trial court abused its discretion in refusing to vacate the default judgment under Civ. R. 60(b) and to grant leave to file an answer under Civ. R. 6(b)."
 Second Cross-Assignment of Error
"The trial court abused its discretion in refusing to vacate the default judgment as to the amount of damages, which was not supported by any competent and credible evidence in the record."
 Third Cross-Assignment of Error
"The trial court's original default judgment should be reversed as a matter of law because the plaintiff failed to sustain his burden of proof on the issue of damages."
 Fourth Cross-Assignment of Error
"The trial court's original default judgment should be reversed as against the manifest weight of the evidence because it is not supported by any competent and credible evidence in the record."
 Fifth Cross-Assignment of Error
"The trial court erred as a matter of law and abused its discretion in entering the original default judgment based upon a motion that was not properly filed and damages that were not adequately substantiated."
 {¶ 12} Mr. Moss, on behalf of himself and Marketing and Creative Solutions, Inc., alleges that the trial court erred in awarding default judgment in favor of Mr. McEnteer. Thus, Mr. Moss also argues that the court improperly denied his Civ.R. 60(B) motion to vacate the default judgment. We disagree.
 {¶ 13} As stated above, the grant or denial of default judgment is reviewed for an abuse of discretion, Natl. City at ¶ 6, which is more than an error of law or judgment, but rather a finding that the court's attitude is unreasonable, arbitrary or unconscionable, Blakemore,5 Ohio St.3d at 219, from which we may not merely substitute our judgment for that of the trial court. Pons, 66 Ohio St.3d at 621. In the present case, the appellees failed to answer the compliant within 28 days and the court granted default judgment. Based on our review, we find no abuse of discretion or any indication that the court's attitude was unreasonable, arbitrary or unconscionable. Rather, the court plainly applied the Rules of Civil Procedure.
 {¶ 14} Similarly, a trial court's denial of a Civ.R. 60(B) motion for relief from judgment is also reviewed for an abuse of discretion. Strackv. Pelton, 70 Ohio St.3d 172, 174, 1994-Ohio-107. Furthermore:
"To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60 (B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE AutomaticElec., Inc. v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
In the present case, we find that the motion was timely and that Mr. Moss at least claimed a meritorious defense, such that the sole remaining issue is whether he is entitled to relief under Civ.R. 60(B)(1)-(5). We conclude from the facts presented, that if relief is to be granted at all, it must be under Civ.R. 60(B)(1), excusable neglect. Under the general definition[1] of excusable neglect, it is some action "not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident." Vanest v. PillsburyCo. (1997), 124 Ohio App.3d 525, 536 fn.8, quoting Black's Law Dictionary (6 Ed. 1990) 566. The Supreme Court has expounded this concept of excusable neglect:
"In our view, the concept of excusable neglect must be construed in keeping with the proposition that Civ. R. 60(B)(1) is a remedial rule to be liberally construed, while bearing in mind that Civ. R. 60(B) constitutes an attempt to strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done." (Internal quotations omitted.) Colley v. Bazell (1980),64 Ohio St.2d 243, 248.
Similarly, the Court has stated:
"[A]lthough we are committed to the principle that Ohio courts should strive to decide cases upon their merits rather than upon procedural grounds, we refuse to let Civ.R. 60(B) serve as an emasculation of the pleading rules and time limits." (Internal citations omitted.) Griffey v.Rajan (1987), 33 Ohio St.3d 75, 79. Thus, with these competing principles in mind, we look to the present case to determine if the trial court abused its discretion.
 {¶ 15} The trial court found that Mr. McEnteer served the complaint on four original defendants: Mr. Moss, Marketing and Creative Solutions, one Frank Tuzzio, and Webmax LLC. Mr. Moss and Tuzzio, corporate representatives for the two companies, contacted an attorney who prepared a leave to plead on behalf of all four defendants jointly. This pleading was unsigned and placed in a file, pending a determination of which parties this attorney would actually represent. It was later decided that this attorney would represent only Mr. Moss and Marketing and Creative Solutions; however, nothing further was prepared or filed. Mr. Moss' excuse is that his attorney, albeit erroneously, thought the response had been filed, and attested to as much under oath.
 {¶ 16} After 28 days without response, Mr. McEnteer moved for default judgment, which the trial court granted on June 11, 2004, five days after the answer was due. Four days later, appellees' attorney filed a certificate for leave to plead, and the next day filed the motion to vacate. Based on the affidavits supporting the motion and a subsequent hearing, the trial court made certain factual findings:
"The pleading was not inadvertently placed in the client's file. It was placed there intentionally and was not executed by [this attorney] because he did not know which of the named defendants he would be representing at that point.
"After the decision was made regarding representation, [the attorney] took no action until June 15, 2004 when he began preparing an answer and checking the court's docket. Stuart E. Moss and Marketing and Creative Solutions, Inc. had received notices that default judgments had been entered against them. There is no explanation or excuse offered for the failure to act on behalf of his clients until June 15, 2004." (Emphasis added.)
Mr. Moss offers no better explanation on appeal.[2] Rather, he relies on Kay v. Glassman (1996), 76 Ohio St.3d 18, 20, to argue against default because his conduct did not rise to the level of a "complete disregard for the judicial system."
 {¶ 17} Foremost, we must disagree with Mr. Moss' logic. In Kay, the Court stated: "the inaction of a defendant is not `excusable neglect' if it can be labeled as a `complete disregard for the judicial system.'" Id. at 20. Logically, the truth of this statement does not necessarily make its converse true (which is Mr. Moss' erroneous premise). For example, a certain farm animal is not a cow if it has wings. This is true, while the converse — an animal is a cow if it does not have wings — is not necessarily true. Yet, this is Mr. Moss' argument: that his conduct is "excusable neglect" because it was not "a complete disregard for the judicial system." Therefore, irrespective of whether his conduct was "excusable neglect," we must disregard this argument as faulty logic.
 {¶ 18} Notably, Mr. Moss raised this same argument to the trial court and after considering the application of Kay to the present case, the trial court explained:
"The argument is made that the facts are identical to those in [Kay]. In that case, an answer had been timely prepared and due to circumstances affected by the retirement of the attorney's bookkeeper had not been filed with the court but unknown to counsel had been mistakenly placed by the secretary in an office file.
"The instant case is factually distinguishable from Kay. Here, there was no proper pleading which had been prepared. The certificate to plead which was prepared did not reflect the defendants for which representation was to be provided. It was unsigned. It could not have been filed with the court and was intentionally placed in an office file. There were no unusual circumstances or emergencies that could account for the failure of counsel to file either a leave to plead or an answer. There was no breakdown in office procedures. Once counsel determined he would only represent two of the four defendants, he inexplicably took no further action until June 15, 2004."
Thus, the trial court concluded, the attorney's conduct at issue in the present case did not constitute "excusable neglect," and therefore, did not satisfy Civ.R. 60(B).[3] Based on our standard of review, we may not merely substitute our judgment for that of the trial court, and finding nothing to suggest an attitude that is unreasonable, arbitrary or unconscionable; we find no abuse of discretion. Pons, 66 Ohio St.3d at 621;Blakemore, 5 Ohio St.3d at 219.
 {¶ 19} On whole, we concur with the trial court to find the attorney's failure to file a response, erroneously believing that it had already been filed, was a direct result of his own carelessness or inattention, and not some unexpected or unavoidable hindrance or accident. SeeVanest, 124 Ohio App.3d at 536 fn.8. Therefore, it does not meet with the ordinary definition of excusable neglect. Moreover, to find for Mr. Moss in this instance, when he offers "no explanation or excuse" for his failure to timely file, would be an "emasculation of the pleading rules and time limits," which the Griffey Court proscribed. Griffey,33 Ohio St.3d at 79. Mr. Moss' cross-assignments of error are overruled.
 III. {¶ 20} Mr. McEnteer's sole assignment of error is overruled. Mr. Moss' five cross-assignments of error are overruled. The decision of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J. Moore, J. concur.
[1] A more elaborate characterization of excusable neglect has been detailed as:
"Although the term excusable neglect is an elusive concept that courts often find difficult to define and to apply, the cases discussing excusable neglect reveal some general principles.
"[1.] First, many cases characterize the type of conduct that does not constitute excusable neglect. Inaction of a party that can be labeled as a `complete disregard for the judicial system' constitutes inexcusable neglect. Additionally, attorney conduct falling `substantially below what is reasonable under the circumstances' constitutes inexcusable neglect.
"[2.] Second, a majority of the cases finding excusable neglect also have found unusual or special circumstances that justified the neglect of the party or attorney. Other cases, however, despite the presence of special or unusual circumstances, declined to find excusable neglect. The cases generally suggest that if the party or his attorney could have controlled or guarded against the happening of the special or unusual circumstance, the neglect is not excusable.
"[3.] Third, excusable neglect may exist when a party has neither knowledge nor actual notice of the lawsuit.
"[4.] Finally, the demands of being a busy lawyer or of being preoccupied with other litigation generally does not constitute excusable neglect." (Edited to accord numbering, internal citations and certain quotations omitted.) Vanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525,536-37.
[2] At oral argument on appeal, Mr. Moss also suggested that an attorney docketing error caused the failure to timely answer. That is, Mr. Moss' trial attorney, or that attorney's secretary, improperly docketed the answer due date which then passed unnoticed; an event which Mr. Moss now argues should be considered excusable neglect. Based on the analysis that follows, we find this version of events no more persuasive than the excuse offered to the trial court and in Mr. Moss' brief on appeal. Court of Appeals of Ohio, Ninth Judicial District.
[3] We are similarly unpersuaded that Colley v. Bazell, also cited by Mr. Moss, is sufficiently on-point to support his position in a case such as this, when the attorney's "excuse" is merely that he erroneously thought the pleading had already been filed. The Colley Court concluded its analysis:
"Turning now to the case at hand, it is undisputed that Bazell acted promptly and responsibly upon being served with the summons. He immediately notified his carrier of the lawsuit and supplied information appropriate to a defense of the lawsuit. But, inexplicably, the paper work was apparently delayed in the mails and a timely answer was not filed, resulting in a default judgment." Colley, 64 Ohio St.2d at 248.
The Colley decision is founded on the premise that "the papers were promptly forwarded through the regular channels and were lost in transit." Id. This predicate, that the filing was "forwarded through the regular channels," is a factual basis which is wholly absent in the present case, where the attorney did not timely prepare a properly titled response (either an answer or leave to plead), did not sign the improperly titled response which he had prepared, and never instructed that the response be filed (or placed into the regular channels), instructing rather, that it be placed in the file, where it was promptly forgotten.