[Cite as *State ex rel. DeWine v. A & L Salvage*, 2013-Ohio-664.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO ex rel. MICHAEL DeWINE, ATTORNEY GENERAL, | ) ) ) | CASE NO.  11 CO 39 |
| PLAINTIFF-APPELLEE, | ) ) | |
| VS. | ) ) | O P I N I O N |
| A & L SALVAGE, et al., | ) ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                   Case No. 10CV248.


JUDGMENT:                          Affirmed in part; Reversed in part.


APPEARANCES:
For Plaintiff-Appellee:            Attorney Michael DeWine
                                   Attorney General
                                   Attorney Nicholas Bryan
                                   Attorney Robert Moormann
                                   Assistant Attorneys General
                                   30 East Broad Street, 25th Floor
                                   Columbus, Ohio  43215


For Defendant-Appellant:           Attorney John Bosco
                                   31805 Vine Street
                                   Willowick, Ohio  44095


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                                   Dated:  February 19, 2013

VUKOVICH, J.

{¶1}  Defendant-appellant A&L Salvage, LLC appeals from the damages order issued by the Columbiana County Court of Common Pleas.  The court ordered A&L Salvage to pay plaintiff-appellee State of Ohio, Ohio Attorney General (referred to as the state), $10,632,679.78 for damages and penalties and also ordered A&L Salvage to transfer and record a 99 year lease for all gas, oil, coal and/or other mineral rights on or under any real property owned by A&L Salvage to the Ohio Environmental Protection Agency (Ohio EPA).

{¶2}  A&L Salvage argues that the trial court has no authority to order A&L Salvage to execute a lease for the oil, gas, coal and mineral rights because such relief was not sought in the complaint or in the motion for default judgment.  A&L Salvage also attacks the trial court's civil penalties order by asserting it is excessive and not supported by the record.

{¶3}  The state disputes both of these positions.  It contends that the motion for default judgment clearly demanded "payments, signing bonus' and royalties received from" A&L Salvage's oil, gas and mineral rights.  Furthermore, it contends that the record supports the civil penalties award.

{¶4}  For the reasons expressed more fully below, the trial court's judgment is affirmed in part and reversed in part.  The trial court's award of civil penalties is supported by the record and does not constitute an abuse of discretion.  Thus, that portion of the judgment is affirmed.  However, as to the grant of the lease for oil, gas and mineral rights, this relief was not prayed for in the complaint.  Thus, Civ.R. 54(C) was not complied with and the trial court erred when it granted such relief.  Additionally, we note that the sole reason for granting the lease was to ensure that the state can collect the large civil penalty award.  Thus, the trial court granted judgment and inappropriately executed on that judgment in the same proceeding.  Therefore, the portion of the judgment granting the lease is reversed.

STATEMENT OF THE FACTS

**{¶5}** A&L Salvage is the owner/operator of a Construction & Demolition Debris (C&DD) facility located at 11225 State Route 45, Lisbon, Columbiana County, Ohio. This site began operating in the early 2000s. Due to violations, the Ohio EPA became involved. (Tr. 10). The Ohio EPA and A&L Salvage reached a consent agreement about the violations. The Ohio EPA then began regularly inspecting the facility. According to the state, violations began resurfacing after about two years. The violations concerned, among other things, acceptance of pulverized debris, improperly handling of asbestos, and hydrogen sulfide gas and odors emanating from the site into the nearby community.

**{¶6}** A&L Salvage ceased operating in February 2009. Allegedly A&L Salvage refused to close the site by its own efforts. Thus, the Ohio EPA accessed A&L Salvage's closure bond and hired a contractor to properly close the site. The bond 3.7 million dollars, but the cost to close the site properly was over 4 million dollars. Thus, the state expended $600,000 to close the facility properly.

**{¶7}** Due to the alleged violations, the state filed a complaint and amended complaint seeking injunctive relief and civil penalties. The amended complaint contains 21 counts and each count alleges a specific type of violation and the date (at least one date) that the violation occurred on. The state sought civil penalties for the violations alleged in counts 1 through 20; some of the violations had a maximum penalty of $10,000 per day for each violation, while others had a $25,000 per day maximum penalty. The state also requested that the court grant any further relief that is necessary. 03/10/10 Complaint; 09/21/10 Amended Complaint.

**{¶8}** In March of 2011, the state moved for default judgment. In addition to other requests, the state requested a hearing to determine the appropriate civil penalty to be assessed against A&L Salvage. In the default judgment motion, it also requested all payments, signing bonuses and royalties received from the A&L Salvage landfill that is the subject of this case, which would specifically include all oil, gas, coal and mineral rights royalties.

**{¶9}** On June 7, 2011 the trial court granted the motion for default. That order indicated that A&L Salvage is to pay any and all oil, gas and mineral royalties to

the Ohio EPA.  The court stated that a hearing on the appropriate civil penalty would be set at a later date.

{¶10} The civil penalty hearing was held on October 25, 2011.  A few days prior to that hearing, counsel for A&L Salvage moved to withdraw.  In the motion to withdraw, counsel indicated that A&L Salvage "is no longer a going concern and has been out of business for two years."  The motion to withdraw was granted and no one appeared on A&L Salvage's behalf at the civil penalty hearing.  At that hearing, the state presented two witnesses.  Following the hearing, the trial court ordered A&L Salvage to pay the state $10,632,679.78.  This sum included $594,961.57 for repayment of the money expended to close the landfill; $1,087,418.21 for statutorily owed disposal fees; $300 tax for creating a public nuisance; $50,000 to the Attorney General's office for attorney fees and extraordinary enforcement costs; and $8.9 million for civil penalties. The trial court also made the following order:

> Further, this Court finds that * * * Defendant A&L Salvage must transfer and record a 99 year lease of all gas, oil, coal and/or mineral rights on, at or under any real property owned by Defendant A&L Salvage to the Ohio Environmental Protection Agency.  * * * The Ohio Environmental Protection Agency my [sic] release this lease for any reason it so desires.

11/09/11 J.E.

{¶11} A&L Salvage appeals from that order.

<u>First Assignment of Error</u>

{¶12} "The Trial Court erred as matter of law when it granted relief on default judgment in excess of the relief sought in the Amended Complaint and in the Demand for Judgment."

{¶13} A&L Salvage argues that the trial court did not comply with Civ.R. 54(C) and Civ.R. 55(C) when it ordered A&L Salvage to pay the state damages in the amount of $10,632,679.78, which included $8.9 million in civil penalties, and to transfer and record a 99 year lease to the Ohio EPA for all gas, oil, coal and/or mineral rights on, at, or under any real property owned by A&L Salvage.  A&L

Salvage contends that pursuant to Civ.R. 54(C) a default judgment award cannot be different in kind or exceed the amount prayed for in the demand for judgment. A&L Salvage asserts that the damages award exceeds the relief sought in the amended complaint because the prayer for judgment in that complaint does not contain a request for a lease and does not specify the amount of civil penalties being sought.

{¶14} The state disagrees and asserts that A&L Salvage was on notice that it was seeking mineral right royalties due to the prayer for relief in the motion for default judgment.

{¶15} In addition to disagreeing on the merit arguments, the parties also disagree as to what standard of review is applicable to this assignment of error.

{¶16} A&L Salvage contends that a de novo standard of review governs a review of the damages award. It cites the Ninth Appellate District to support that position. *McEnteer v. Moss,* 9th Dist. Nos. 22201 and 22220, 2005-Ohio-2679, ¶ 6-7. In that case, the court explained:

> A trial court's decision to grant a motion for default judgment is reviewed under an abuse of discretion standard. Unlike the initial decision to grant a default judgment, however, the determination of the kind and maximum amount of damages that may be awarded is not committed to the discretion of the trial court, but is subject to the mandates of Civ.R. 55(C) and Civ.R. 54(C). * * * Therefore, the question of whether a trial court's grant of default judgment complies with Civ.R. 55(C) and Civ.R. 54(C) is one of law, which we review de novo.

*Id.* quoting, *Natl. City Bank v. Shuman,* 9th Dist. No. 21484, 2003-Ohio-6116, ¶ 6. *See also Dye v. Smith,* 189 Ohio App.3d 116, 2010-Ohio-3539, 937 N.E.2d 628 (4th Dist.); *Bransky v. Shahrokhi,* 8th Dist. No. 84262, 2005-Ohio-97.

{¶17} The state disagrees and contends that an abuse of discretion standard of review applies when reviewing a damages award resulting from a default judgment. It cites to the Second, Third, Tenth and Twelfth Appellate Districts. *Henry v. Richardson,* 193 Ohio App. 3d 375, 2011-Ohio-2098, 951 N.E.2d 1123, ¶ 8 and fn

1 (12th Dist.); *Darke Cty. Veterinary Serv. v. Rucker,* 2d Dist. No. 1727, 2008-Ohio-4009, ¶ 9; *Columbus Invest. Group, Inc. v. Maynard,* 10th Dist. Nos. 02AP–271 and 02AP–418, 2002-Ohio-5968, ¶ 27; *North Main Motors, Inc. v. Hayes* (May 30, 1997), 3d Dist. No. 14–96–34, 1997 WL 282382. These courts note that the Ohio Supreme Court has not adopted the de novo standard of review and cite to the general proposition that an award of damages is reviewed under an abuse of discretion standard of review.

**{¶18}** We tend to agree with the reasoning of the Ninth, Fourth and Eighth Appellate Districts. Thus, when determining whether the award of damages resulting from a default judgment complies with Civ.R. 54 and 55, a de novo standard of review is applicable. That said, as is shown below, regardless of whether we apply a de novo standard of review or an abuse of discretion standard of review, the result in this case is same.

**{¶19}** As aforementioned, there are two issues raised in this assignment of error. One addresses the civil penalties award and the other addresses the trial court's grant of a 99 year lease to the Ohio EPA for all oil, gas, coal and mineral rights on the land owned by A&L Salvage. Each is addressed in turn.

1. Civil Penalties

**{¶20}** Civ.R. 54(C) provides that a default judgment damages award shall not exceed the amount "prayed for in the demand for judgment." The prayer for relief in the amended compliant does not include a total computation of the civil penalties it was seeking. Rather paragraph H and I in the amended complaint seek:

> H. Pursuant to R.C. 3714.13(B), order each Defendant to pay the State a civil penalty of up to ten thousand dollars ($10,000.00) per day for the violations set forth in Counts One (1) through Ten (10), including any violations occurring after the filing of this Complaint;

> I. Order Defendant A&L Salvage, LLC, pursuant to R.C. 3704.06(C), to pay a civil penalty of up to twenty-five thousand dollars ($25,000) per day of each violation set forth in Counts Eleven (11)

through Twenty (20), including each day of violation subsequent to the filing of this action;

09/21/10 Amended Complaint.

{¶21} Counts 1 through 20 claim that A&L Salvage has or is violating various sections of the Ohio Revised Code and/or Ohio Administrative Code. These counts also either contain specific dates that violations occurred on or claim that the violations occurred within a specified date range. Conservatively computing the potential civil penalty from the dates listed in the complaint, it is easy to determine that the state is seeking a civil penalty in excess of $10 million.

{¶22} That said, the state does not specifically state a dollar amount it is seeking in civil penalties. However, that lack of specificity does not violate the pleading requirements. Civ.R 8(A) provides that the complaint must contain a demand for judgment. If the party is seeking more than $25,000, the party shall state so in the pleading. Civ.R. 8(A). However, in that instance, the pleading is not required to be specific in the amount the party is seeking as recovery, unless the claim is based upon an instrument required to be attached pursuant to Civ.R. 10. Civ.R. 8(A). Civ.R. 10 applies to claims that are based on accounts or medical liability claims. Thus, it is not applicable in this situation. Therefore, the demand for relief was not required to be specific.

{¶23} Consequently, given the above, we must conclude that the demand for judgment, which included an indication that the state was seeking more than $25,000 in civil penalties, complied with Civ.R. 8(A). Furthermore, given the specificity in the pleadings, it is easy to determine that the state is seeking millions of dollars in civil penalties. Thus, A&L Salvage did have notice of the general amount of civil penalties the state was seeking. Consequently, for those reasons we find that the default judgment damages award did not exceed the amount "prayed for in the demand for judgment" and thus, did not violate Civ.R. 54(C). This conclusion is reached even if we apply an abuse of discretion standard of review.

2. 99 Year Lease

**{¶24}** In regards to the 99 year lease, A&L Salvage's position is that it was not put on notice that the state was seeking a 99 year lease. The amended complaint does not contain a demand for a 99 year lease nor does it contain a demand for the gas, oil, coal and/or mineral rights. The motion for default judgment, however, does request mineral right royalties:

> Issue an order pursuant to R.C. 3714.11(A) and (B) enjoining Defendant A&L to pay any and all payments, signing bonus' and royalties received from the A&L Salvage C&DD landfill that is the subject to of this case, including but not limited to oil/gas and mineral royalties, directly to Ohio EPA for deposit into the fund established by R.C. 3734.281 titled "Environmental Remediation Protection Fund."

Motion for Default Judgment.

**{¶25}** As can be seen, this prayer for relief does not ask for a 99 year lease, rather it merely seeks royalties.

**{¶26}** While the state may claim that the prayer for relief in the motion for default judgment is sufficient to comply with Civ.R. 54(C) because a lease is not "different in kind" from royalties, we disagree. The exact language of Civ.R. 54(C) states:

> A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings.

Civ.R. 54(C).

**{¶27}** The second sentence of this rule states that a party shall be granted relief that it is entitled to even if that party did not demand the relief in the pleadings. However, the introductory phrase of that sentence indicates that that rule does not apply to a party that has a default judgment rendered against them. Therefore, when

a default judgment is rendered against a party, the only relief that the party seeking the default judgment may obtain is relief that is requested in the pleadings or relief that is "in kind" to the relief requested in the pleadings.

**{¶28}** Our sister districts have explained that the primary purpose of Civ.R. 54(C)'s limitation on default judgment is to "ensure that defendants are clearly notified of the maximum potential liability to which they are exposed, so that they may make an informed, rational choice to either: (1) enable a default judgment by not responding, or (2) invest the time and expense involved in defending an action." *Dye*, 2010-Ohio-3539, at ¶ 8 (4th Dist.); *Natl. City Bank* v. *Shuman*, 9th Dist. No. 21484, 2003-Ohio-6116, ¶ 11; *White Oak Communities, Inc. v. Russell* (Nov. 9, 1999), 10th Dist. No. 98AP–1563, 1999 WL 1009745 (Nov. 9, 1999). *See Masney v. Vallo*, 8th Dist. No. 84983, 2005-Ohio-2178, ¶ 18.

**{¶29}** Therefore, based on the above, we find that the request for the mineral right royalties in the motion for default judgment was not sufficient to comply with Civ.R. 54(C). Assuming, without deciding, that a request for mineral rights royalties is not different in kind from the granting of a lease for all coal, oil, gas and mineral rights on, at, or under any real property owned by A&L Salvage, that request for relief had to be made in the amended complaint. Here, the state, in the amended complaint, did not pray for coal, oil, gas, or mineral royalties or a lease for all coal, oil, gas, and/or mineral rights on, at, or under any real property owned by A&L Salvage. Furthermore, none of the prayers for relief in the amended complaint can be considered "in kind" to the lease that was granted. Therefore, the trial court erred and abused its discretion when it granted the lease to the Ohio Environmental Protection Agency. The language in Civ.R. 54(C) and the reasoning behind Civ.R. 54(C)'s limitation on default judgment supports such a conclusion.

**{¶30}** In addition to the above, there is another problematic aspect of the trial court granting the lease in the Ohio EPA's favor. At the penalty hearing, the state did ask for a lease for all the oil, gas, coal and mineral rights to the land owned by A&L Salvage. Tr. 40. The reasoning for requesting such action was to ensure that it could collect any monetary damages award, which would include civil penalties, that

the trial court awarded in its favor. Tr. 40. Therefore, when the trial court granted the request for monetary damages and the request for the execution of a lease to the Ohio EPA it was not only granting judgment, but was also executing on that judgment in the same proceeding. Execution of judgment is an independent and separate proceeding that is held to enable a creditor to collect on the judgment; it is ancillary and incidental to the judgment. *Dailey v. State Farm Mut. Auto. Ins. Co.*, 2d Dist. No. 14732, 1994 WL 527677 (Sept. 27, 1994). *See also*, Civ.R 69; R.C. 2327.01; R.C. 2327.02. Therefore, the trial court erred when it granted judgment and executed on that judgment in the same proceeding.

**{¶31}** Furthermore, when the trial court granted the lease, this was potentially done to the detriment of other prior creditors, which would include Wells Fargo, the mortgagor. If the state cannot collect on the judgment and initiates execution of judgment proceedings where it seeks to obtain a lease, Wells Fargo is most likely a necessary party to that proceeding. In that instance, Wells Fargo and any other creditor can argue whether such lease should be granted in the Ohio EPA's favor.

**{¶32}** Therefore, for those reasons, the trial court erred and/or abused its discretion when it granted the lease in the state's favor. The trial court's decision regarding the granting of the lease is reversed.

### 3. Resolution of First Assignment of Error

**{¶33}** In regards to the civil penalties award, this assignment of error lacks merit. However, as to the granting of the 99 year lease, this assignment of error is meritorious.

### Second Assignment of Error

**{¶34}** "The Trial Court erred as a matter of law when it ordered A&L Salvage to transfer and record a 99-year lease of all gas, oil, coal and/or mineral rights to the Ohio Environmental Protection Agency."

**{¶35}** Similar to the first assignment of error, this assignment of error addresses the 99 year lease. Having found merit and determined that the trial court's granting of the lease must be reversed, this assignment of error is rendered moot.

### Third Assignment of Error

{¶36} "The Trial Court erred as a matter of law, abused its discretion and/or violated A&L's Constitutional Due Process rights by awarding excessive and unsubstantiated penalties of 8.9 Million."

{¶37} This assignment of error solely focuses on the $8.9 million civil penalties award. The assessment of an appropriate civil penalty lies within the sound discretion of the trial court and will not be reversed upon appeal absent evidence that the trial court abused its discretion in imposing the penalty. *State ex rel. Cordray v. Morrow Sanitary Co.*, 5th Dist. No. 10CA10, 2011-Ohio-2690, ¶ 27; *State ex rel. Brown v. Dayton Malleable, Inc.*, 1 Ohio St.3d 151, 157, 438 N.E.2d 120 (1982), and *State v. Tri–State Group, Inc.,* 7th Dist. No. 03BE61, 2004–Ohio–4441. To ensure that the penalty will be significant enough to affect the violator and deter future violations, the trial court has the discretion to determine the exact amount of the penalty. *Morrow Sanitary Co.*, citing *State ex rel. Montgomery v. Maginn*, 147 Ohio App.3d 420, 426–427, 770 N.E.2d 1099 (12th Dist.2002). In determining the amount of the penalty, the court should consider evidence relating to defendant's recalcitrance, defiance, or indifference to the law; the financial gain that accrued to defendant; the environmental harm that resulted; and the extraordinary costs incurred in enforcement of the law. *Morrow Sanitary Co.*

{¶38} A&L Salvage argues that the award is not supported by the record.

{¶39} As explained earlier, A&L Salvage was adequately put on notice of the civil penalty the state was seeking. There was a 21 count complaint filed against it; the first 20 counts contain violations that are subject to civil penalties. A&L Salvage chose not to defend that civil penalty and thus, did not appear at the civil penalty hearing. If you only use the dates specified in the complaint and only use one violation for when the state claims that a violation continued periodically through a specified time, there are over 900 days of violations asserted. If A&L Salvage received the maximum penalty on all of those violations, the penalty would easily be over $10 million. Thus, from the complaint alone there is sufficient information to support the $8.9 million civil penalty award.

{¶40} However, we do not need to solely rely on the complaint to support the violations the state is referencing in the complaint. At the civil penalty hearing, the state offered testimony from two workers from the Ohio EPA and introduced exhibits that contain violation letters from the Ohio EPA to A&L Salvage.

{¶41} Count one of the amended complaint alleges that A&L Salvage accepted pulverized and/or unrecognizable construction and demolition debris in violation of R.C. 3714.081(A) and R.C. 3714.13(A). The complaint states that the alleged violations began on March 23, 2005 and allegedly continued periodically until A&L Salvage ceased accepting waste on February 21, 2009.

{¶42} At the damages hearing, Bruce McCoy, a witness for the state inspected the site, testified that his December 27, 2006 inspection report documented the pulverized debris he saw at the site on that date. Furthermore, from our review of the exhibits admitted at the hearing, A&L Salvage accepted pulverized debris on December 27, 2006; January 12, 2007; February 2, 2007; February 16, 2007; May 3, 2007; May 10, 2007; July 26, 2007; and August 1, 2007. Therefore, evidence indicates that A&L Salvage violated that rule at least eight times. Pursuant to R.C. 3714.11(B), this type of violation can receive a civil penalty of up to $10,000 for each day of each violation. Thus, the trial court could award up to $80,000 in civil penalties for these violations.

{¶43} Count two alleges unlawful acceptance and disposal of solid waste in violation of Ohio Adm.Code 3745-400-11(F)(2). The complaint asserts that this violation began on April 15, 2006 and continued periodically until the site closed on February 21, 2009. Ohio Adm.Code 3745-400-11 is the Ohio EPA regulation on the operation of C&DD facilities. Subsection (F)(2) dictates what type of solid waste can be disposed of at the C&DD facility. R.C. 3714.11(B) provides that a civil penalty of up to $10,000 per day per violation can be issued for violations of R.C. Chapter 3714 or for violating a permit or rule adopted under that statute. The exhibits introduced by the state during the damages hearing show a violation of Ohio Adm.Code 3745-400-11(F)(2) was observed on June 29, 2006; January 12, 2007; February 2, 2007;

February 16, 2007; February 18, 2007; May 3, 2007; August 8, 2007; and February 19, 2009. That is eight violations and could result in a civil penalty of up to $80,000.

{¶44} Count three alleges unlawful cliffing of debris in violation of Ohio Adm.Code 3745-400-11(F)(3)(d) and claims that this began on January 27, 2007 and occurred periodically until the facility closed on February 21, 2009.

{¶45} Ohio Adm.Code does prohibit the cliffing of debris and R.C. 3714.11(B) provides that a violator can receive a civil penalty of up to $10,000 per day of each violation. The violations letters that were admitted as exhibits at the hearing provide at least three violations of cliffing – January 12, 2007, February 18, 2007, and January 12, 2009. Thus, the record would support a civil penalty of $30,000 for cliffing debris.

{¶46} The fourth count of the complaint states that A&L Salvage violated Ohio Adm.Code 3745-400-11(F)(3) by allowing waste that had been shredded, pulverized or unrecognizable to be unloaded directly onto the working face of the facility rather than to be unloaded in the unloading zone for inspection. This is an accurate statement of what Ohio Adm.Code 3745-400-11(F)(3) prohibits. Pursuant to R.C. 3714.11(B) a civil penalty of up to $10,000 per each day of each violation can be warranted for unloading zone violations.

{¶47} The complaint states that unloading zone violations occurred on June 29, 2006 and on other dates unknown. The violation letters that were introduced as exhibits confirm that a violation occurred on June 29, 2006. In our review of all of the violations letters submitted as exhibits, we found at least four other citations to unloading zone violations. These occurred on January 12, 2007; February 2, 2007; February 18, 2007; and August 8, 2007. Thus, the trial court would not have abused its discretion had it issued a $50,000 civil penalty for unloading zone violations.

{¶48} The fifth count in the amended complaint contains allegations concerning surface water pollution. Ohio Adm.Code prohibits water pollution in the operation of C&DD facility. Ohio Adm.Code 3745-400-11(B)(16). Violations of this can result in $10,000 per each day of each violation. R.C. 3714.11(B). The complaint asserts four separate dates that this type of violation occurred –

September 19, 2006, September 26, 2006, December 27, 2006 and April 21, 2007. It is also alleged that other surface water contamination violations occurred on dates unknown to the state.

{¶49} We can find support for only three of the instances complained of – the September 19, September 26, and December 27, 2006 instances. The April 26, 2007 letter that documents the violations the state observed on April 21, 2007 is missing the second page of the letter. Potentially that letter may document the fourth instance; however, without the remainder of the letter in the record it cannot conclusively be determined that the evidence supports the fourth instance. Thus, for surface water pollution a civil penalty of $30,000 could be issued against A&L Salvage.

{¶50} Count six of the amended complaint deals with weekly cover. Ohio Adm.Code 3745-400-11(H)(1) states that in order to prevent fires, the operator of the facility must cover all disposed combustible debris on a weekly basis with soil, clean fill, or other material which is noncombustible. The combustible debris must be covered and not visible. Failure to abide by that rule can result in a civil penalty of up to $10,000 per each day of violation. R.C. 3714.11(B).

{¶51} In the complaint, the state asserted that violations of weekly cover occurred not only on dates unknown, but also on September 29, 2005 and February 18, 2007. Our review of the record provides evidence of the February 18, 2007 violation, but not the September 29, 2005 violation. Thus, up to a $10,000 civil penalty for weekly cover is supported by the evidence submitted at the hearing.

{¶52} Count seven of the complaint is for failing to follow the Director's orders regarding the installation of an explosive gas monitor. The complaint alleged that this violation occurred continuously from June 26, 2007 through November 27, 2007.

{¶53} R.C. 3714.13(C) and Ohio Adm.Code 3745-400-11(B) requires compliance with the director's order. Failing to comply with a director's order can result in a civil penalty of up to $10,000 per day for each violation. R.C. 3714.11(B).

{¶54} The dates in the complaint June 26, 2007 through November 27, 2007 amount to 155 days. The letters of violation show that the gas monitor was not

installed as of June 27, 2007 and was still not installed on October 24, 2007. The record does not clearly disclose when the monitor was installed. The record does show that by December 26, 2007 it had been installed, but it was not the correct model. From the violation letters, we conclusively know that the monitor was not installed from June 27, 2007 through and including October 24, 2007. Beyond that date it is unclear. Using the June and October dates, that amounts to 120 days of violating the director's orders and accordingly the record would support at least up to a $1,200,000 civil penalty. That said, the civil penalty could be more than that because, as stated above, on December 26, 2007, A&L Salvage was still in violation of the director's order by failing to install the correct model. (January 7, 2008 Letter). Thus, at least 63 more days of violations occurred regarding the gas monitoring. This could add another $630,000 to the $1,200,000 civil penalty mentioned above.

**{¶55}** Count eight of the amended complaint asserts that, in violation of R.C. 3714.07, A&L Salvage failed to pay the disposal fees and late fees. In addition to seeking the disposal fees and late fees, the state also sought a civil penalty for failing to pay these fees pursuant to R.C. 3714.11.

**{¶56}** R.C. 3714.11(A) allows the court to impose a civil penalty of not more than $10,000 for each day of each violation of this chapter. Accordingly, it appears in addition to disposal fees and late fees, a civil penalty could be issued. The exhibits contain billing statements for disposal fees and show that from June 2008 through February 2009, A&L Salvage did not pay any disposal fees. Testimony at the hearing confirms that these disposal fees and late fees were not paid as of the date of the hearing on October 25, 2011. Tr. 28. The amended complaint states that this violation occurred from June 2008 to the present. From June 2008 until the date of the amended complaint (September 21, 2010, which is a conservative number since the record would support the violation going until October 25, 2011) is 812 days. Thus, the civil penalty could be at least $8,120,000.

**{¶57}** Count nine is for violations of managing and disposing of leachate. Ohio Adm.Code 3745-400-11(P)(3) dictates that leachate must be managed and disposed

of according to the regulations. This type of violation is subject to up to a $10,000 per day for each violation. R.C. 3714.11(A) and (B).

{¶58} The testimony at the civil penalty hearing established that there was a leachate problem from the mid 2000's through the site being closed by the state in 2010. Tr. 25. The amended complaint only seeks damages for the leachate problem from June 7, 2010 through the present. The exhibits clearly indicate that A&L Salvage was notified of the violations from June 7, 2010 until September 16, 2010. The exhibits even suggest that as late as May 20, 2011 the leachate problem was not being taken care of. Using the conservative dates of June 7, 2010 through the date of the amended complaint, September 21, 2010, that is 107 days of violations. Thus, the civil penalty could be up to $1,070,000.

{¶59} Counts 10, 11 and 12 of the amended complaint contend that A&L Salvage created a nuisance in its operation of the Construction & Demolition Debris landfill. In general, the state contends that these violations began on January 3, 2007 and continued at various times. All three counts discuss the odors emanating from the landfill, specifically the rotten egg smell from the hydrogen sulfide gas that the failure to properly dispose of the waste caused. Count 10 deals with violations which would authorize a civil penalty of up to $10,000 for each day of a violation. R.C. 3714.11(B). Counts 11 and 12 deal with violations that would permit a civil penalty of up to $25,000 for each day of a violation. R.C. 3704.06(B) and (C).

{¶60} Counts 10 and 11 both address odors and appear to overlap each other. Specifically, count 10 states that there is a violation of R.C. 3714.13 (A) and (C) and Ohio Adm.Code 3745-400-11(B)(15), while count 11 states that there is a violation of R.C. 3704.05(A), the rules of the director of the Ohio EPA concerning odor emissions and Ohio Adm.Code 3745-15-07 (which is the Ohio EPA's general rule on the prohibition of air pollution nuisances). Count 10 references the acceptance of the pulverized debris causing the odor. The inspector explained pulverized debris is not allowed to be accepted because there is no way to know what it is, i.e. you do not know if it is construction and demolition debris. Tr. 11-12. Furthermore, he explained that most of the time when this pulverized debris gets

saturated and soaked there is a chemical reaction that take place that creates hydrogen sulfide gas that is low lying to the grounds and escapes the facility. Tr. 12. Count 11 discusses more of the gas and odor polluting the air.

**{¶61}** Considering how the two counts overlap and that count one of the amended complaint specifically dealt with the prohibited acceptance of pulverized debris, counts 10 and 11 could be combined into one count. Since they are dealing more with air pollution, the $25,000 civil penalty for each day of each violation applies.

**{¶62}** In the exhibits there is a minimum of 10 violations concerning odor nuisances – January 3, 20017, February 1, 2007; February 2, 2007; February 16, 2007, February 18, 2007; February 22, 2007, April 21, 2007; August 20, 2007; October 16, 2007; January 19, 2009. In addition to the letters of violation, the record contains "H2S Jerome Meter field logs" that tracked the hydrogen sulfide gas off the landfill premises, i.e. at nearby residences. It was detected on January 30, 2007; June 11, 2007; November 12, 2009; December 18, 2009; December 22, 2009; January 12, 2010; February 9, 2010; and March 8, 2010. In addition to those readings, the exhibits also indicated the total number of odor complaints the state has received regarding this facility. From 2003 to 2009 there had been 303 complaints. In 2007 alone there were 171 complaints. Furthermore, the state submitted roughly 20 verified complaints it has received regarding the odor and air pollution. Those complaints came from various different people and only a couple of the names filed more than one complaint.

**{¶63}** Considering that there are 10 violations documented in letters from the Ohio EPA to A&L Salvage, that would be up to $250,000 for a civil penalty for air pollution. That is a conservative number of violations when considering the Jerome Meter readings were not added in. If we add in the 8 Jerome Meter Readings that adds up to $200,000 more in civil penalties.

**{¶64}** Count 12, in addition to addressing odor issues, also deals with dust emissions. As to the nuisance dust emissions that are referenced in count 12, the

record confirms at least 2 violations. This could amount to a civil penalty of up to $50,000.

{¶65} Counts 13 through 18 of the amended complaint all deal with asbestos related violations. Count 13 concerns the proper disposal of asbestos. It is alleged that A&L Salvage allowed asbestos material to be broken up. Ohio Adm.Code 3745-20-06 is the Ohio EPA's rules on asbestos handling at waste disposal sites and section (B)(2) prohibits the breaking up of asbestos material. Additionally, a permit was issued by the director that required A&L Salvage to use the best technology to dispose of asbestos. R.C. Chapter 3704 controls air pollution and section R.C. 3704.05 states that no person shall violate the terms of a permit.

{¶66} The complaint states that violations of disposal of asbestos began on February 16, 2007 and continued periodically until the facility ceased accepting waste on February 21, 2009. The record (the violation letters) confirms three violations – February 16, 2007, February 22, 2007, and April 11, 2008. Pursuant to R.C. 3704.06(B) and (C), A&L Salvage is subject to up to a $25,000 civil penalty for each day of each violation. Thus, the civil penalty for these violations could amount to $75,000.

{¶67} In count 14, the state claims that A&L Salvage did not properly cover asbestos. Ohio Adm.Code 3745-20-06(B)(3) requires asbestos to be covered at the end of the day by 12 inches of compacted nonasbestos material. A permit was also issued by the director authorizing A&L Salvage to dispose of asbestos materials and that permit stated this rule as a requirement. The complaint alleges that A&L Salvage violated the rule and permit on dates unknown and on February 18, 2007.

{¶68} The record confirms the February 18, 2007 violation, but is devoid of any other violation of improper asbestos covering. Pursuant to R.C. 3704.06(B) and (C), A&L Salvage is subject to a civil penalty up to $25,000 for the one documented violation.

{¶69} Count 15 deals with an asbestos disposal cell with fencing. Ohio Adm.Code 3745-20-06(B)(4) requires asbestos unloading to be restricted to an area that is not authorized to the entry of the general public. In this count, the state

claimed that A&L Salvage failed to surround the active asbestos disposal site with fencing and failed to deter unauthorized entry by the general public and unauthorized personnel. A permit was also issued by the director authorizing A&L Salvage to dispose of asbestos materials and that permit stated this rule as a requirement.

**{¶70}** In the amended complaint, it is asserted that A&L Salvage violated the rule and permit on dates unknown and on August 1, 2007. The record confirms the August 1, 2007 violations, but contains no other references to this violation occurring again. Pursuant to R.C. 3704.06(B) and (C), A&L Salvage is subject to a civil penalty up to $25,000 for the one documented violation.

**{¶71}** Count 16 alleges that A&L Salvage failed to display asbestos warning signs in violation of Ohio Adm.Code 3745-20-06(B)(5). A permit was also issued by the director authorizing A&L Salvage to dispose of asbestos materials and that permit stated this rule as a requirement.

**{¶72}** In the amended complaint, it is asserted that A&L Salvage violated the rule and the permit on dates unknown and on August 1, 2007. The record confirms the August 1, 2007 violations, but is devoid of any reference to other violations of this rule. Pursuant to R.C. 3704.06(B) and (C), A&L Salvage is subject to a civil penalty up to $25,000 for the one documented violation.

**{¶73}** Count 17 concerns visible dust from asbestos material. Ohio Adm.Code 3745-20-06(B)(1) prohibits the visible emissions to the outside air from asbestos containing waste materials during on-site transportation, or compacting operations. A permit was also issued by the director authorizing A&L Salvage to dispose of asbestos materials and that permit stated this rule as a requirement.

**{¶74}** In the amended complaint, it is asserted that A&L Salvage violated the rule and permit beginning on September 13, 2007 and continuing various times until the facility stopped accepting waste for disposal on February 21, 2009. The violation letters contain two references to asbestos dust emissions, one on September 13, 2007 and the other on April 18, 2008. Pursuant to R.C. 3704.06(B) and (C), A&L Salvage is subject to a civil penalty up to $50,000 for the two documented violations.

**{¶75}** Count 18 concerns the failure to maintain equipment to wet asbestos. R.C. 3704.05(C) provides that no person shall violate any terms of a permit. A permit was issued by the director authorizing A&L Salvage to dispose of asbestos materials and that permit required equipment available for wetting asbestos to be in a ready to use condition and to be in the appropriate location.

**{¶76}** In the amended complaint, it is asserted that A&L Salvage violated the permit on dates unknown and on August 28, 2007. The record confirms the August 28, 2007 violation, but is devoid of any reference to other violations of the permit. Pursuant to R.C. 3704.06(B) and (C), A&L Salvage is subject to a civil penalty up to $25,000 for the one documented violation.

**{¶77}** Count 19 alleges A&L Salvage failed to minimize or eliminate visible dust emissions from general operations. A permit that was issued to A&L Salvage requested it to eliminate any visible dust emissions from roadways and parking areas except for emissions for one minute over a sixty minute period.

**{¶78}** As previously stated, R.C. 3704.05 provides that no person shall violate any terms of a permit. It is claimed that the violations occurred on July 19, 2007, August 29, 2007 and other dates unknown. The record confirms three dates of violations - July 19 2007, August 29, 2007, and April 17, 2008. Pursuant to R.C. 3704.06(B) and (C), A&L Salvage could be subject to a civil penalty up to $75,000 for the three documented violations.

**{¶79}** In count 20, the state asserts that A&L Salvage violated a permit that the state issued to it because it did not promptly remove earth or other material from trucking in a manner to prevent re-suspension of the earth or other material on paved roads. Preventing re-suspension of earth is also listed in Ohio Adm.Code 3745-17-08(B)(9). The alleged violations occurred on July 19, 2007, August 28, 2007 and other dates unknown. The record confirms violations on the two listed dates, but does not contain reference to any other violation of this type on any other day. Thus, pursuant to R.C. 3704.06(B) and (C), A&L Salvage is subject to a civil penalty up to $50,000 for the two documented violations.

**{¶80}** When considering the first 20 counts and the violations referenced above, there is sufficient evidence to support the $8.9 million civil penalty. In fact, the record would support a higher penalty. Even if the above was not enough to support the penalty, there is also general testimony from Mr. Bryan of the Ohio EPA that there are 5,500 days of violations that would be subject to the $10,000 per day civil penalty. Tr. 40-41. Likewise, that same person testified that 1,100 days of violations would be subject to the $25,000 per day civil penalty. Tr. 41.

**{¶81}** Furthermore, in ordering this civil penalty, the court did consider evidence relating to A&L Salvage's defiance or indifference to the law, the environmental harm that resulted, and the extraordinary costs incurred in enforcement of the law. *Morrow Sanitary Co.*, 5th Dist. No. 10CA10, 2011-Ohio-2690, ¶ 27. At the hearing, Mr. Bryan, one of the witnesses for the state, made the following statement:

> After that A&L Salvage was required to close the facility. I believe they had one year in order to close the facility and they subsequently failed to comply and they did not close the facility. At that point the director of Ohio EPA called in the financial insurance instrument for closure of the site. I believe it was first time we had ever had to do that. And the director then – or agency's technical staff developed statements of work. We sent them to our contractors who then came up with some solutions and some designs on how to close the site.
>
> * * *
>
> Some of the money [to close the site] came from the financial assurance bond that was pulled. It was put into a trust. And some of the money came – there wasn't enough money to conduct the closure at the site with the amount of money that we had in the financial assurance instrument. * * * Ohio EPA had to pay approximately $600,000 beyond that which was in the financial assurance instruction to close the site.

* * *

Well, when I was preparing for this case I started looking through the file. And I knew that we had had a fairly long noncompliance history here, we'd had a pattern of noncompliance. And when I looked at the file it was actually – I looked at the facts and it was actually worse than I had recalled through that time. And as I look at this, and I have looked at civil penalties for many years, and I look at the fact that we had over 300 complaints from local citizens regarding the odors here, and I look at the fact that we had to to [sic] an administrative action in this case, which then got violated and we had to refer it to the Attorney General's Office. I look at the fact that there have been underground combustion or fires at the site. We had to conduct surveillance of the site. We had to do extraordinary measures to monitor the site. For instance, we did 24 hour monitoring where we had our employees driving around the perimeter of the site trying to get a handle on the odors, you know, to verify the citizens' complaints. We had to use very expensive monitoring equipment that our staff had to use to monitor hydrogen sulfide odors. And we had between one and two of those devices in operation for many years at this site. And people would have to come by and download data maybe weekly.

We have had the acceptance and disposal of solid waste at this site. We've had acceptance and disposal of pulverized debris at this site. This site represented one of our directors [sic] highest enforcement priorities. In fact, he came to this area at least on two occasions that I know of just to talk to the citizens about the issues here at this site. So it was fairly significant for a director to do that.

When I look at the facts here and I look at what we are trying to accomplish, you know part of the penalty is to punish, and we're trying to establish a deterrent value as a message for others who may be looking at this case and trying to determine whether to comply or not.

* * *

When I look at this site and I compare it to the other sites, many times we're able to gain compliance fairly quickly, hopefully we enter into negotiations we could have handle at the administrative level. [sic] Again at this site, it had to go to the Attorney General's Office. There's been a lot more put into this particular site and this case than many other cases that I witnesses over the last 20 years. So this has been a significant noncompliant entity and I think it deserves an appropriate penalty.

Tr. 34-35, 36-37, 42-43.

{¶82} It has been explained that, "Civil penalties can be used as a tool to implement a regulatory program." *State ex rel. Brown v. Howard*, 3 Ohio App.3d 189, 191, 444 N.E.2d 469 (1981), citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). Substantial penalties are used as a mechanism to deter conduct contrary to the regulatory program. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 231–232, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *State ex rel. Brown v. Dayton Malleable, Inc.*, 1 Ohio St.3d 151, 438 N.E.2d 120 (1982). In order to be an effective deterrent to violations, civil penalties should be large enough to hurt the offender but not cause bankruptcy. *Morrow Sanitary Co.* at ¶ 26, citing *Dayton Malleable.*

{¶83} We do not have information about the financial gain accrued by A&L Salvage in its operation of the landfill nor do we have any information on how this civil penalty will affect A&L Salvage. This was information that A&L Salvage could have submitted at the hearing, however, it chose not to attend. It is not up to the court or the state to make A&L Salvage's arguments for it.

{¶84} Therefore, considering the history of this case, all evidence submitted at the penalty hearing, and the fact that A&L Salvage did not attend the hearing, the trial court did not abuse its discretion in ordering the $8.9 million civil penalty. This assignment of error lacks merit.

## CONCLUSION

**{¶85}** For the foregoing reasons, the trial court's decision is affirmed in part and reversed in part. The trial court's monetary damages award, including the $8.9 million civil penalty award, is upheld. However, the trial court's order requiring A&L Salvage to execute a lease to the state for all coal, oil, gas and mineral rights on, at, or under any real property owned by A&L Salvage is reversed.

Waite, J., concurs.
DeGenaro, P.J., concurs.