[Cite as *Sailors v. Pacheco*, 2021-Ohio-3180.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

FRANK SAILORS,

    Plaintiff-Appellant,

- v -

JUAN C. PACHECO, a.k.a.
JUAN C. PACHECO ANDRADE, et al.,

    Defendants-Appellees.

CASE NO. 2021-L-011

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2020 CV 000333

## O P I N I O N

Decided: September 13, 2021
Judgment: Affirmed

*Eric T. Deighton*, Carlisle, McNellie, Rini, Kramer & Ulrich Co., LPA, 24755 Chagrin Boulevard, Suite 200, Cleveland, OH 44122 (For Plaintiff-Appellant).

*Juan C. Pacheco, a.k.a. Juan C. Pacheco Andrade*, pro se, 481 North St. Clair Street, Painesville, OH 44077 (Defendant-Appellee).

*Meishlee Rivera*, pro se, 1278 West Jackson Street, Painesville, OH 44077 (Defendant-Appellee).

*NP Landscaping LLC*, pro se, c/o Meishlee Rivera, 1278 West Jackson Street, Painesville, OH 44077 (Defendant-Appellee).

*Primerose Landscaping LLC*, pro se, c/o Juan C. Pacheco Andrade, 481 North St. Clair Street, Painesville, OH 44077 (Defendant-Appellee).

*New Horizon Landscaping LLC*, pro se, c/o Lyn Adams, 47 Wellesley Boulevard, Painesville, OH 44077 (Defendant-Appellee).

*Flavio Pacheco*, pro se, 481 North St. Clair Street, Painesville, OH 44077 (Defendant-Appellee).

*Gilberto Pacheco*, pro se, 481 North St. Clair Street, Painesville, OH 44077 (Defendant-Appellee).

*Felipe Pacheco*, pro se, 481 North St. Clair Street, Painesville, OH 44077 (Defendant-Appellee).

MARY JANE TRAPP, P.J.

{¶1} Appellant, Frank Sailors ("Mr. Sailors"), appeals the judgment of the Lake County Court of Common Pleas, which awarded him a default judgment on some of his claims against appellees, Juan C. Pacheco, a.k.a. Juan C. Pacheco Andrade ("Mr. Pacheco"); Meishlee Rivera ("Ms. Rivera"); NP Landscaping LLC, Primerose Landscaping LLC, New Horizon Landscaping LLC, (collectively, the "corporate appellees"); and Flavio Pacheco, Gilberto Pacheco, and Felipe Pacheco.

{¶2} Mr. Sailors raises four assignments of error on appeal, contending the trial court erred in failing to grant him a default judgment on his breach of contract, negligent workmanship, illegitimate transfer, and piercing the corporate veil claims. More specifically, he asserts the trial court failed to take the averments in his pleadings as true pursuant to Civ.R. 8(D), award him damages on his breach of contract and negligent workmanship claims, and in failing to find he properly pleaded claims of illegitimate transfer and piercing the corporate veil.

{¶3} After a review of the record and pertinent law, we find Mr. Sailors' assignments of error to be without merit. A review of the testimony and evidence introduced at the Civ.R. 55 hearing reveals there was no evidence presented as to the amount of damages supporting Mr. Sailors' breach of contract claim or any evidence of an extra-contractual duty or extra-contractual damages on his tort claim. Furthermore, Mr. Sailors failed to introduce any evidence that appellees were fraudulently transferring

2

Case No. 2021-L-011

assets or that the corporate entities' veils should be pierced. Simply put, without evidence to support the claims for damages contained in the complaint to which there has been no answer, the trial court may decline to make an award.

{¶4}    The judgment of the Lake County Court of Common Pleas is affirmed.

## Substantive and Procedural History

{¶5}    In February 2020, Mr. Sailors filed a complaint in the Lake County Court of Common Pleas, alleging seven claims for relief against appellees: (1) collection on a note for the unpaid sum of $40,000; (2) collection on a note for the unpaid sum of $23,320; (3) breach of contract with damages of $9,594 for a check Mr. Sailors gave to appellees to purchase building materials; (4) alteration of checks; (5) negligence for breach of duty for work performed in breach of the parties' agreement in excess of $50,000; (6) illegitimate transfer of assets to avoid collection of judgments from 2017 for $44,000 and $37,000 (plus 4% interest per annum); and (7) piercing the corporate veil because Mr. Pacheco, Ms. Rivera, as well as Mr. Pacheco's brothers, Flavio, Filberto, and Gilberto, are the shareholders, officers, and/or directors of the corporate appellees, and are indistinguishable from the corporate entities, which they used to commit fraud and other wrongdoings.

## Motion for Default Judgment

{¶6}    After appellees failed to file an answer or otherwise respond, Mr. Sailors filed a motion for default judgment with an affidavit. More specifically, he attested that he was the holder of two promissory notes, naming Exhibit A, a $40,000 note due from Mr. Pacheco, and Exhibit B, $23,320, a promissory note due from Mr. Pacheco and Ms. Rivera, respectively.

3

Case No. 2021-L-011

{¶7} Mr. Sailors further averred that in October 2018, he, as the representative of Omaha Res LLC, the owner of the property located at 2065 Evergreen Road, Perry, Ohio 44081 (the "property"), entered into a contract with Mr. Pacheco and Ms. Rivera to repair the property (Exhibit C). Mr. Sailors gave them a check for $9,594 to buy materials. Appellees delivered less than half of the required materials, and what was delivered appeared to be used materials from another worksite. He alleged Mr. Pacheco and Ms. Rivera breached their contract by failing to complete the work, using substandard materials, failing to obtain permits, and performing below the standard of care.

{¶8} Mr. Sailors also alleged Mr. Pacheco altered his checks to increase the amount, and cashed some of the checks, but did not use the funds to obtain materials for the property. Thus, Mr. Sailors alleged he was damaged in the amounts of $12,000 for the checks and additional materials; $50,000 for the substandard work; and $44,000 and $37,000 plus interest at the rate of 4% per annum for the two earlier court judgments.

{¶9} The trial court found all of the appellees were in default of the pleading. After reviewing Mr. Sailors' motion and affidavit, the court determined an evidentiary hearing was necessary, at which Mr. Sailors would be required to present evidence establishing liability as well as damages against each defendant on each of the seven counts set forth in the complaint. The court further noted that Mr. Sailors had failed to attach the exhibits referenced in his affidavit to his motion for default judgment.

{¶10} At the hearing, Mr. Pacheco appeared pro se and requested a continuance so that he could obtain an attorney. The court gave Mr. Pacheco one week to secure counsel and file a notice of appearance, and it rescheduled the evidentiary hearing.

4

## Civ.R. 55 Default Judgment Hearing

{¶11} At the second evidentiary hearing, the appellees, including Mr. Pacheco, failed to appear.

{¶12} Mr. Sailors testified that he took care of Mr. Pacheco since he was 12 years old. When Mr. Pacheco was older, Mr. Sailors loaned him $40,000 to start a business with his brothers. After he did so, Mr. Pacheco and his brothers disappeared for several years. He was familiar with the various corporate entities appellees owned: NP Landscaping, LLC; Primerose Landscaping, LLC; and New Horizon Landscaping, LLC.

{¶13} Mr. Pacheco began to repay the $40,000 loan in monthly payments of $1,500 until he disappeared, and, according to Mr. Sailors, the $40,000 loan was now due (Exhibit A). He further explained that the second promissory note, signed by Mr. Pacheco and his wife, Ms. Rivera, was a loan for $23,320 (Exhibit B).

{¶14} Exhibit C was a contract to build a patio on the back of the house on the property. Mr. Sailors claimed that Mr. Pacheco's brothers wanted to repay some of the money they owed him so they entered into a contract to build the patio. Mr. Sailors gave Mr. Pacheco a check made payable to Pavertile Wholesale for $9,594 for materials. Mr. Pacheco, however, delivered less than half the tile necessary and never came back to finish the job.

{¶15} Mr. Sailors introduced into evidence pictures of the tile appellees delivered, which Mr. Sailors could not match. He was forced to spend another $10,000 for new tile from Florida. Later, he realized Mr. Pacheco never bought the tile from Pavertile Wholesale. The $9,594 check was endorsed by appellee, Primerose Landscaping, and Mr. Pacheco signed and cashed it. Mr. Pacheco also altered a $1,000 check Mr. Sailors had given him by increasing it to $4,000.

5

{¶16}  Mr. Sailors also discovered appellees failed to dig the footers of the patio's foundation to the required depth of 42 inches.  He obtained the advice of an engineer, who observed the footers were only 36 inches deep and that the state of Ohio building code required a depth of 42 inches due to the frostline.  Mr. Pacheco agreed with Mr. Sailors and the engineer and told Mr. Sailors he would fix the foundation.  Mr. Sailors did not introduce the engineer's report into evidence and told the court that the engineer he used was a friendly acquaintance who gave him advice based on the open-ended question, "If this was your property…?"

{¶17}  Mr. Sailors further testified that two or three weeks after the meeting with the engineer, Mr. Pacheco disappeared.  Mr. Sailors spent approximately $30,000 to repair and redo the work appellees performed.  A month before the hearing, Mr. Sailors had to bring in tons of dirt to raise the frostline, remove a tree stump upon which the foundation was erroneously built, and fill in the steps with soil.  Mr. Sailors entered into evidence pictures of appellees' poor workmanship, including the cooktop and kitchen top counter that did not fit and left gaps for rainwater; the grill obstructed by stone that prevented it from moving; tree roots that were underneath the foundation; and the unfunctional chimney and flue.

{¶18}  Mr. Sailors also entered into evidence checks delivered to appellees totaling approximately $30,000, as well as credit card statements that reflected charges for the truck, trailer, and tools he bought for Mr. Pacheco and Ms. Rivera.  He also entered into evidence the following text messages: (1) Mr. Pacheco texted Mr. Sailors to call a supplier and pay for his tools; (2) Mr. Sailors texted Mr. Pacheco to bring the purchased materials to the property; and (3) Mr. Pacheco replied, "[Mr. Sailors] iam [sic] going to install the sqft that we bought that was 1713sqft at $5.75 that is $10,000."

6

{¶19} Mr. Sailors further testified that several years ago he loaned Mr. Pacheco and his brothers, money to start a business and that they disappeared soon after. He obtained a judgment against them in Lake County Common Pleas Court case no. 16CV002065, which he never collected. He believed appellees transferred different assets to different family members and/or businesses that they owned. The only asset of which he was aware that was titled under a different name was a truck titled in Ms. Rivera's name. Mr. Sailors also noticed that Mr. Pacheco had cashed many of the checks at a check cashing center.

{¶20} In sum, Mr. Sailors testified that he was damaged in the amounts of (1) $40,000 (Exhibit A), (2) $23,320 (Exhibit B), (3) $9,594 as a result of the check issued to another payee but cashed by Mr. Pacheco, (4) upwards of $50,000 on the patio project (Exhibit C), and (5) previous judgments against Mr. Pacheco for $44,000 plus 4% interest per annum (6) and his brothers, Flavio and Gilberto, for $37,000 plus 4% interest per annum.

{¶21} The court asked Mr. Sailors why he continued to loan money and conduct business with appellees after he obtained $81,000 in judgments against them. Mr. Sailors stated that they apologized, worked hard, and he mistakenly trusted them.

**The Trial Court's Findings and Default Judgment Award**

{¶22} The court issued a judgment entry, finding as follows:

{¶23} (1) Mr. Sailors failed to present evidence showing liability on the part of appellees Flavio, Gilberto, or Felipe, as well as NP Landscaping LLC and New Horizon Landscaping, LLC, since none of them signed any contracts or promissory notes. Thus, no judgment was awarded against those appellees.

7

Case No. 2021-L-011

{¶24} (2) On the $40,000 loan made to Mr. Pacheco, judgment was awarded to Mr. Sailors in the amount of $40,000 plus 5% per annum statutory interest.

{¶25} (3) The court found there was a loan contract between Mr. Sailors and Mr. Pacheco and Ms. Rivera for $23,320, which became due on October 31, 2019, by which Mr. Pacheco and Ms. Rivera agreed to help Mr. Sailors fix his house for free for one year. The contract also specified that the money was to be spent on a truck ($15,500), trailer ($5,210), tools ($2,000), and repair of a bobcat excavator ($700), which Mr. Sailors paid for by credit card. The court awarded Mr. Sailors $23,320 plus 5% annum statutory interest from October 31, 2019.

{¶26} (4) The trial court addressed the breach of contract and negligent workmanship claims together and awarded judgment in favor of Mr. Pacheco, finding that Mr. Sailors failed to prove any extra-contractual breach of duty or to present evidence of extra-contractual damages or amounts of damages separate from his breach of contract claim. The trial court also found in favor of the corporate appellees since there was no evidence that any of them were parties to a contract.

{¶27} (5) As to the shoddy workmanship/breach of contract damages claim, the court found the parties' contract did not specify who was to obtain the permits, who designed the patio, and if Mr. Pacheco was even capable of designing it. Because the permits were not obtained, the need to install 42-inch footers was overlooked. Mr. Sailors did not provide evidence of the cost to add the additional soil to the stairs or the estimated cost of repair work for the grill, fireplace, or flue of the fireplace. Absent that evidence, the trial court found it was unable to award those costs to Mr. Sailors. The court further found Mr. Sailors was not entitled to the $10,000 cost of the Florida tiles because the stones were incorporated into the patio as a necessary cost of material in the contract,

8

and this would have resulted in a double recovery. The trial court also could not conclude Mr. Sailors was denied substantial enjoyment of the patio because the patio has a large fire pit and a well-equipped outdoor kitchen that he can use.

{¶28} (6) The trial court found Mr. Sailors claimed appellees walked off the job over a dispute without testifying as to the nature of the dispute. The contract, signed only by Mr. Pacheco on April 13, 2019, provided for the construction of the patio for $43,000, itemized the materials and cost, but provided no allowance for cost of labor.

{¶29} Mr. Sailors alleged that Mr. Pacheco's brothers claimed they would work for free to pay off their debt from the judgments Mr. Sailors obtained against them. The trial court found, however, that Mr. Sailors' testimony was contradicted by his own evidence because he introduced $39,619 in checks that he paid for labor and material, of which at least $10,830 was documented as labor.

{¶30} The trial court awarded Mr. Sailors $12,594 plus 5% per annum statutory post-judgment interest. The sum of $3,000 from this amount related to the unauthorized alteration of the $1,000 check to Mr. Pacheco, and the additional $9,954 represented the money intended for the wholesaler that Mr. Pacheco diverted.

{¶31} (7) The trial court found Mr. Sailors failed to present any competent, credible evidence that there were any fraudulent transfers of assets.

{¶32} (8) Further, Mr. Sailors failed to introduce evidence to support piercing the corporate veil of the corporate appellees since there was no evidence the corporate entities were parties to any contracts or promissory notes.

{¶33} Mr. Sailors raises four assignments of error on appeal:

{¶34} "[1.] The trial court abused its discretion in determining that Sailors is not entitled to a default judgment on his Breach of Contract claim.

9

{¶35} "[2.] The trial court abused its discretion in determining that Sailors is not entitled to a default judgment on his Negligence claim.

{¶36} "[3.] The trial court abused its discretion in determining that Sailors is not entitled to a default judgment on his Illegitimate transfer claim.

{¶37} "[4.] The trial court abused its discretion in determining that Sailors is not entitled to a default judgment on his Piercing the Corporate Veil claim.

**Standard of Review**

{¶38} Civ.R. 55(A) provides in pertinent part:

{¶39} "Entry of judgment. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor; * * *. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper * * *." (Emphasis added.)

{¶40} "[W]hether a court shall render a default judgment with or without requiring evidence in support of the plaintiff's claim rests in the sound discretion of the trial judge. * * * Having discretion to require evidence to support the plaintiff's allegations, it follows that the court should make [its] decision conform to the law as applicable to the facts proven, and if no cause of action is shown no default judgment in plaintiff's favor should be rendered." *Streeton v. Roehm*, 83 Ohio App. 148, 152, 81 N.E.2d 133 (1st Dist.1948).

{¶41} We have previously held that a trial court's decision to grant or deny a motion for default judgment is reviewed under an abuse of discretion standard. *Sericola*

10

Case No. 2021-L-011

*v. Johnson*, 2016-Ohio-1164, 61 N.E.3d 643, ¶ 18 (11th Dist.). Courts have continued to apply this standard of review when a trial court decides a motion for default judgment after hearing evidence. *See, e.g., X-S Merchandise, Inc. v. Wynne Pro, L.L.C.*, 8th Dist. Cuyahoga No. 97641, 2012-Ohio-2315, ¶ 13; *Queen v. Hanna*, 2012-Ohio-6291, 985 N.E.2d 929, ¶ 32 (4th Dist.).

{¶42} Accordingly, we will review the trial court's judgment for an abuse of discretion, which is the "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error. *Id.* at ¶ 67. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.*

{¶43} However, once default judgment is entered, "the determination of the kind and maximum amount of damages that may be awarded is not committed to the discretion of the trial court, but is subject to the mandates of Civ.R. 55(C) and Civ.R. 54(C)." *Natl. City Bank v. Shuman*, 9th Dist. Summit No. 21484, 2003-Ohio-6116, ¶ 6. The civil rules are "the law of this state with regard to practice and procedure in our state courts." *Rockey v. 84 Lumber Co.*, 66 Ohio St.3d 221, 224, 611 N.E.2d 789 (1993). Thus, "the question of whether a trial court's grant of default judgment complies with Civ.R. 55(C) and Civ.R. 54(C) is one of law, which we review de novo." *Natl. City Bank* at ¶ 6; *see also Masny v. Vallo*, 8th Dist. Cuyahoga No. 84983, 2005-Ohio-2178, ¶ 15.

Case No. 2021-L-011

{¶44} Civ.R. 55(C) provides that "[i]n all cases a judgment by default is subject to the limitations of Rule 54(C)." Under Civ.R. 54(C), "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."

{¶45} "The primary purpose of Civ. R. 54(C)'s limitations on default judgments is to ensure that defendants are clearly notified of the maximum potential liability to which they are exposed, so that they may make an informed, rational choice to either: (1) enable a default judgment by not responding, or (2) invest the time and expense involved in defending an action." *Natl. City Bank* at ¶ 11; *see also Masny* at ¶ 18.

{¶46} Moreover, the assessment of damages is a matter within the province of the trier of fact. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. When considering whether the judgment of the trial court is against the manifest weight of the evidence, it is important that the court of appeals be guided by a presumption that the findings of the trier of fact are correct. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). The weight to be given the evidence as well as the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**Breach of Contract and Negligent Workmanship Claims**

{¶47} Because Mr. Sailors' first and second assignments of error are interrelated, we will address them together. In these assignments of error, Mr. Sailors contends the trial court erred in finding that there was a lack of evidence of damages on his breach of contract and negligent workmanship claims because the trial court was required to apply

12

Civ.R. 8(D) and accept all of the allegations in his complaint as true. He further claims the trial court erred in failing to find evidence of an extra-contractual duty or extra-contractual damages on his tort claim.

{¶48} In his breach of contract claim, Mr. Sailors contended appellees failed to complete the construction of the patio as expected. In his negligent workmanship claim, Mr. Sailors contended appellees failed to construct the patio in a workmanlike manner.

{¶49} In order to plead a cognizable claim for breach of contract, a plaintiff is required to allege (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages. *Byers DiPaola Castle, LLC v. Portage Cty. Bd. of Commrs.*, 2015-Ohio-3089, 41 N.E.3d 89, ¶ 23 (11th Dist.). "'Damages are an essential element to a breach of contract claim.'" *Id.*, quoting *Allen v. Znidarsic Bros., Inc.*, 11th Dist. Lake No. 99-L-088, 2001 WL 20726, *3 (Dec. 29, 2000). Without damages, there can be no remedy for breach of contract. *Id.*

{¶50} In general, where a contract action exists against a breaching party, a tort claim based upon the same underlying actions cannot coexist with the contract action, unless the breaching party also breached a duty owed independent of the contract. *Evans Landscaping, Inc. v. Stenger*, 2011-Ohio-6033, 969 N.E.2d 1264, ¶ 16 (1st Dist.). In order for the two claims to coexist, the plaintiff must show damages separate from those attributable to the breach of contract claim and that an independent duty exists, and damages resulting from that breach. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 9

{¶51} Thus, Mr. Sailors was required to introduce evidence of the amount of damages in his breach of contract claim and any extra damages from a breached duty in tort that was independent of his breach of contract claim.

13

{¶52} Mr. Sailors claims he did so in his complaint and motion for default judgment; thus, pursuant to Civ.R. 8(D), the trial court was required to accept his allegations as true because appellees failed to file an answer or otherwise respond.

{¶53} Mr. Sailors is correct that averments in pleadings are deemed admitted when the other party fails to answer or otherwise respond. Pursuant to Civ.R. 8(D), "effect of failure to deny," "[a]verments in a pleading to which a responsive pleading is required, *other than those as to the amount of damage*, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided." (Emphasis added.)

{¶54} However, the court may not simply rest on the party's averments where the amount of damages is not certain or more evidence is needed to determine the allegations in the pleadings. Accordingly, the trial court held a hearing pursuant to Civ.R. 55(A) after reviewing Mr. Sailors' affidavit attached to his motion for default judgment "to establish the truth of any averment by evidence or to make an investigation of any other matter."

{¶55} This court has held that it is reversible error for the trial court to enter a default judgment without holding a hearing on the damages issue when a judgment is not liquidated or only partially liquidated. *Mid-Am. Acceptance Co. v. Reedy*, 11th Dist. Lake No. 89-L-14-072, 1990 WL 94816, *2 (June 29, 1990). We have also found that the "repeated assertion that the trial court was required to accept all the averments in the complaint as 'admitted' is simply without merit" where Civ.R. 8(D) would have been inequitable as applied to terms of a contract. *Bd. of Trumbull Twp. Trustees v. Rickard*, 2017-Ohio-8143, 98 N.E.3d 800, ¶ 71 (11th Dist.). In *Rickard*, a hearing was necessary pursuant to Civ.R. 55(A) where a written contract could not be located and no one had personal knowledge of any written contract. *Id.* at ¶ 56.

14

{¶56} In order to recover damages, the injury and resulting damage must be ascertained with reasonable certainty and not left to conjecture and speculation. *Adams v. Pitorak & Coenen Invests., LTD.*, 11th Dist. Geauga No. 2011-G-3019, 2012-Ohio-3015, ¶ 28. A plaintiff bears the burden of "'proving the nature and extent of damages whether an action sounds in tort or contract.'" *Id.*, quoting *Countywide Home Loans, Inc. v. Huff*, 11th Dist. Trumbull No. 2009-T-0044, 2010-Ohio-1164, ¶ 47.

{¶57} Furthermore, a trial court has broad discretion in assessing the weight and credibility of the evidence of damages. *Skiver v. Wilson*, 2018-Ohio-3795, 119 N.E.3d 969, ¶ 18 (8th Dist.). And there is no requirement that a trial court award damages based upon the estimates provided. *Id.*; *see Sotnyk v. Guillenno*, 6th Dist. Lucas No. L-13-1198, 2014-Ohio-3514 (finding no error where the trial court considered the evidence, was fully engaged in the hearing, and sought clarification/explanation for the estimated costs and awarded the appellant half of the requested amount). "'[A]n appellant's disagreement with the trier of fact as to the appropriate amount of damages is not grounds for reversal.'" *Id.*, quoting *Arendt v. Price*, 8th Dist. Cuyahoga No. 101710, 2015-Ohio-528, ¶ 16; *see Sotnyk* at ¶ 11.

{¶58} Our review of the evidence introduced at the hearing supports the trial court's findings, i.e., there was no evidence of the amount of repairs needed for the grill, chimney, or flue, nor was there evidence of who was to obtain the permit that would have led to the discovery of the shallow footers. There was also no evidence that the $10,000 Florida tiles were not already included in the necessary cost of materials. Furthermore, while there was evidence that Mr. Pacheco walked off the job over a dispute, it was not clear what was unpaid, and Mr. Sailors' claims that appellees would work for free was contradicted by the checks he delivered to them for labor.

{¶59} Quite simply, Mr. Sailors failed to support his damage claims with evidence of actual amounts of costs to repair, and his contradictory testimony as to monies owed and paid under the contract at the damages hearing undercut his credibility. *See Dye v. Smith*, 189 Ohio App.3d 116, 2010-Ohio-3539, 937 N.E.2d 628, ¶ 10 (4th Dist.) (because appellants made no effort to quantify damages in the complaint or at the damages hearing, the court declined to address those issues). Further, there was no evidence of an extra-contractual duty or resulting damages to support Mr. Sailors' tort claim for failure to perform in a workmanlike manner.

{¶60} In sum, there is competent, credible evidence that supports the trial court's findings that no independent tort was alleged and that there was no evidence of damages, either contractual or extra-contractual, on Mr. Sailors' claims for breach of contract and negligent workmanship.

{¶61} Mr. Sailors' first and second assignments of error are without merit.

### Fraudulent Transfers and Piercing the Corporate Veil

{¶62} In his third and fourth assignments of error, Mr. Sailors contends the trial court erred in determining he was not entitled to default judgment because there was no evidence set forth in the hearing as to any illegitimate or fraudulent transfers of assets and his piercing the corporate veil claims. More specifically, he argues the trial court should have rested on the averments in his pleadings pursuant to Civ.R. 8(D) or allowed him time for discovery. Because the same reasoning applies to both assignments of error, we will address them together.

{¶63} At the outset, we note that Mr. Sailors' Civ.R. 8(D) argument fails for the same reasons addressed above. Further, a Civ.R. 55 hearing is not only a damages hearing, but also an evidentiary hearing where the trial court may investigate any matter.

16

Thus, Civ.R. 55(A) states, "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages *or to establish the truth of any averment by evidence or to make an investigation of any other matter*, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties." (Emphasis added.) When "'the determination of damages necessarily requires consideration of information outside a written instrument, the trial court abuses its discretion in failing to hold an evidentiary hearing to determine the exact amount of damages.'" *Hull v. Clem D's Auto Sales*, 2d Dist. Darke No. 2011 CA 6, 2012-Ohio-629, ¶ 7, quoting *Am. Communications of Ohio, Inc. v. Hussein*, 10th Dist. Franklin No. 11AP-352, 2011-Ohio-6766, ¶ 16. Likewise, the failure to plead a claim is fatal in the context of a Civ.R. 55 motion for default judgment. *Chuparkoff v. Ohio Title Loans*, 2019-Ohio-209, 131 N.E.3d 403, ¶ 10-11 (9th Dist.) (finding that regardless of any evidence of damages the plaintiff may have presented at the damages hearing, a review of the plaintiff's complaint revealed it was brief and notably vague, with no basis for the unjust enrichment claim); *Darfus v. Clark*, 5th Dist. Fairfield No. 12-CA-9, 2013-Ohio-563, ¶ 66 ("It is within the discretion of the trial court to determine whether further evidence is needed to support the plaintiff's claim against the defaulting defendant").

{¶64} Moreover, despite his claim that he needed "more time for discovery," a review of the record reveals Mr. Sailors had more than ample time to prepare for the second, rescheduled evidentiary hearing. *See Doe v. Canton Regency*, 5th Dist. Stark No. 2010 CA 00048, 2010-Ohio-5976, ¶ 75 (finding that appellant's counsel had sufficient notice and adequate time to prepare for rescheduled damages hearing where he stated

Case No. 2021-L-011

he was available); *Clark* at ¶ 77 (finding that the trial court did not improperly conduct damages hearing where the hearing was twice continued at appellant's request).

{¶65} We also agree with the trial court's determination that Mr. Sailors introduced no evidence of fraudulent transfers of assets and failed to properly plead such a claim in his complaint.

{¶66} Pursuant to R.C. 1336.04(A), which governs fraudulent transfers of assets:

{¶67} "A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

{¶68} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

{¶69} "(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

{¶70} "(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

{¶71} "(b) The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

{¶72} Mr. Sailors testified, "One of the trucks that I bought for them years ago, the guy that was doing the countertops, Ed Potti, needed a truck and so he said, 'I'm going to buy Juan's.' So he needed the money to do that and on the title of that truck was [Ms. Rivera's] name." The court asked whether that was the only fraudulent transfer of which he was aware, and Mr. Sailors responded, "That's the only one I know of."

18

Case No. 2021-L-011

{¶73} This lone testimony fails to meet the elements of a fraudulent transfer. Without evidence supporting each statutory element, Mr. Sailors' claim necessarily fails.

{¶74} Likewise, we find no error in the trial court's decision that Mr. Sailors failed to establish the elements required to pierce the corporate veil.

{¶75} The Supreme Court of Ohio in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Ins.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993), established a three-pronged test for courts to use when deciding whether to pierce the corporate veil. "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Id.* at paragraph three of the syllabus.

{¶76} The court later modified the second prong, placing the burden on the plaintiff to "demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, syllabus.

{¶77} There was no evidence presented at the hearing that the corporate appellees were parties to any contract or promissory note, as alleged by Mr. Sailors. Without evidence supporting all three prongs of the test, Mr. Sailors' claim necessarily fails. As we stated in *State ex rel. Yost v. Church of Troy*, 2020-Ohio-4695, 159 N.E.3d 818 (11th Dist.):

19

Case No. 2021-L-011

{¶78} "'[W]hether a court shall render a default judgment with or without requiring evidence in support of the plaintiff's claim rests in the sound discretion of the trial judge. * * * Having discretion to require evidence to support the plaintiff's allegations, it follows that the court should make [its] decision conform to the law as applicable to the facts proven, and if no cause of action is shown no default judgment in plaintiff's favor should be rendered.'" *Id.* at ¶ 44, quoting *Streeton, supra*, at 152.

{¶79} Mr. Sailors' third and fourth assignments of error are without merit.

{¶80} The judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.