[Cite as *D'Amico v. Zidian*, 2026-Ohio-47.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

JACOB D'AMICO ET AL.,

Plaintiffs-Appellants,

v.

CHARLES ZIDIAN ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0045**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CV 100

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Michael R. Fortney*, Fortney Law, LLC, for Plaintiffs-Appellees and

*Atty. James N. Melfi*, Betras Kopp, LLC, for Defendants-Appellants.

Dated:  January 8, 2026

**HANNI, J.**

**{¶1}** Appellants Jacob D'Amico and Krystal Culler (Appellants) appeal the trial court's partial denial of their objections to the magistrate's decision concerning damages. The trial court awarded Appellants: $89,662.50 in compensatory damages for breach of contract; $10,000 for two violations of the Home Construction Services Suppliers Act, R.C. 4722 (HCSSA) against Appellee Zidian Professional Contractors, LLC (ZPC); $1 in punitive damages against Appellee Charles Zidian (Zidian); and $28,047.43 in attorney fees against Appellees, jointly and severally.

**{¶2}** Appellants contend that the trial court's granting of their motion for default judgment against Appellees as a discovery sanction resulted in Appellees admitting the facts and damages presented in their complaint. Appellants maintain the trial court therefore erred by failing to award them the damages presented in Exhibit Z, an estimate by SFC Construction, of costs for restorations and repairs of their home. Appellants assert the trial court failed to award the following damages from Exhibit Z: $6,000 for garage doors, $7,500 for doors, $19,742 for removing and replacing damaged flooring on the first floor of the house, and $16,700 for work in the basement.

**{¶3}** Appellants also contend the trial court arbitrarily and unreasonably limited the amount of the magistrate's punitive damages award apportioned to Zidian. They submit the magistrate awarded them $118,361.79 in punitive damages against Zidian and the trial court limited that award to $1. Appellants also challenge the trial court's modification of joint and several liability, asserting the magistrate imposed joint and several liability against both Appellees in the amount of $118,361.79 and the trial court modified joint and several liability against Zidian to attorney fees in the amount of $28,047.43.

**{¶4}** For the following reasons, we affirm the trial court's decision. The granting of default judgment does not result in automatic damages. Damages must still be proven and it is Appellants' burden to prove damages. No testimony or expert report was presented about the garage or exterior doors, and neither the magistrate nor the trial court addressed these items. However, the trial court rejected awarding any damages from

Case No. 25 MA 0045

Exhibit Z, the estimate of SFC Construction for repairs and replacements after ZPC was terminated from the job. Competent, credible evidence supports this determination.

{¶5} Finally, Appellants are incorrect in stating that the trial court modified the punitive damages award against Zidian. Further, the trial court's decision to impose joint and several liability only as to attorney fees is not an abuse of discretion. Zidian signed the construction contract only in a company capacity. ZPC is identified in the construction contract and members of a limited liability company are not generally responsible for the company's contracts unless the member or officer intentionally or inadvertently binds himself as an individual.

## I.   FACTUAL AND PROCEDURAL HISTORY

{¶6} On January 17, 2023, Appellants filed a complaint against Appellees in the Mahoning County Common Pleas Court. In Count 1, Appellants alleged ZPC breached the construction contract the parties had to build their home. They asserted ZPC failed to complete home construction in a timely and workmanlike manner, submitted false change orders, failed to pay subcontractors, installed materials without their permission, and abandoned the construction. In Count 2, Appellants asserted claims under the HCSSA against ZPC.

{¶7} Appellants asserted fraud against Zidian in Count 3 of the complaint. They alleged Zidian made intentional false representations to Premier, the bank which provided the construction loan to Appellants. Appellants contended Zidian misrepresented to Premier that Appellant D'Amico signed various draw requests for funds so that ZPC could receive additional payments from Premier.

{¶8} Count 4 of Appellants' complaint alleged a claim against Premier for breach of the construction loan agreement by failing to abide by the agreement's terms. Appellants subsequently dismissed Premier from the complaint.

{¶9} Count 5 alleged a civil conspiracy by ZPC, Zidian, and Premier.

{¶10} Zidian filed a motion to dismiss the complaint against him. He asserted he was improperly named personally in the lawsuit for actions stemming from ZPC, a business entity. The court denied Zidian's motion.

{¶11} ZPC filed an answer, counterclaim, crossclaim, and third-party complaint against Appellants for foreclosure on its mechanic's lien based on funds owed ZPC by Appellants. ZPC also alleged breach of contract and unjust enrichment for monies owed under the contract after they canceled the contract. The counterclaim also alleged fraud against Appellants for enlarging the construction plans without informing Premier and by manipulating the process to obtain benefits from ZPC to perform extra work without paying for it. ZPC also alleged civil conspiracy, tortious interference with contractual relationships, and interference with business relationships.

{¶12} On March 4, 2024, the trial court granted Appellants' motion for default judgment against Appellees. The trial court found default proper due to Appellees' continued failure to respond to discovery requests and their failure to comply with the court's order to respond to discovery within 14 days.

{¶13} The court thus ordered a damages hearing before the magistrate. The court also noted that ZPC's counterclaims, cross-claims and third-party complaint would be dismissed in 30 days if it failed to make efforts to prosecute.

{¶14} Appellants filed a motion for entry of dismissal of ZPC's claims with prejudice and for the court to set a damages hearing. The court dismissed all of Appellees' claims against Appellants with prejudice and denied Appellees' motion under Civ.R. 60(B) for relief from judgment.

{¶15} On August 23, 2024 and January 16, 2025, the magistrate held damages hearings. Appellant Culler testified, as did Appellants' construction expert, Sam Fortney, the owner of SFC Construction. Appellants presented numerous exhibits, including Exhibit Z, an itemized statement concerning costs for restorations and repairs of Appellants' home. Zidian testified as well and presented exhibits.

{¶16} On February 28, 2025, the magistrate issued her decision, entering judgment in Appellants' favor against Appellees, jointly and severally, in the amount of $118,361.79, with interest. The magistrate noted the default judgment against Appellees which resulted in judgment for Appellants on their breach of contract, HCSSA, and fraud claims.

{¶17} Based on the testimony and exhibits, the magistrate determined Appellants were entitled to $89,662.50 in compensatory damages. She began with the contract price

of $449,000 and subtracted deposits made by Appellants, draws made by Appellees, and the amounts Appellants paid out of pocket to complete the home. The magistrate held that Appellants paid $89,662.50 more than they bargained for to complete their home after ZPC breached the contract.

{¶18} The magistrate declined to award Appellants $66,227 in estimated costs from Exhibit Z, the estimate from SFC Construction for repairs and replacements. The magistrate found Appellants failed to prove those repairs were necessary and/or caused by ZPC's negligence. The magistrate reasoned that Mr. Fortney, Appellants' expert, did not conduct a walk-through of the home until well after its completion and Appellants hired other subcontractors to complete projects in the home after terminating ZPC from the job. The magistrate found it unclear which portions of the projects were due to ZPC's negligence. She further determined that Appellants' 78% estimation of home completion by ZPC before services were terminated did not result in an assumption that ZPC was responsible for all outstanding issues. The magistrate further found that many of the issues Mr. Fortney identified in his expert report and testimony were either cosmetic or had other causes and were not necessarily deviations from minimum quantifiable standards.

{¶19} The magistrate also awarded Appellants $10,000 under the HCSSA for violations of R.C. 4722.03(A)(3)(d) and (A)(3)(f). This constituted $5,000 per violation.

{¶20} The magistrate further awarded $18,698.29 in attorney fees to Appellants. Recognizing each party is generally responsible for their own attorney fees under the American Rule, the magistrate noted a party could be responsible for the other party's attorney fees when punitive damages are awarded. The magistrate awarded punitive damages since Appellees failed to reimburse Appellants for a number of items they paid for and Zidian forged Appellants' signature on the final draw request, which resulted in the termination of Appellees' services. The magistrate found these actions justified punitive damages because Appellants established actual malice by showing Appellees consciously disregarded their rights, which had a great probability of causing them substantial harm and caused them such harm. The magistrate awarded Appellants nominal punitive damages in the amount of $1 and attorney fees in the amount of

$18,698.29. The magistrate awarded Appellants a total of $118,361.79, jointly and severally.

**{¶21}** Both parties filed objections to the magistrate's decision. On April 7, 2025, the trial court granted in part and denied in part the objections and modified the magistrate's decision. The trial court's judgment entry adopted that of the magistrate, except the court awarded Appellants $99,662.50 against ZPC for breach of contract and HCSSA violations, $1 in punitive damages against Zidian, and $28,047.43 in attorney fees against Appellees, jointly and severally. The court entered judgment in Appellants' favor against Zidian and ZPC in the total amount of $127,710.93, "as apportioned above," plus interest from the date of the decision.

**{¶22}** On May 7, 2025, Appellants filed a notice of appeal. In their brief, they assert two assignments of error. In the first assignment of error, Appellants assert:

**THE TRIAL COURT AND MAGISTRATE ERRED WHEN THEY FAILED TO AWARD DAMAGES CAUSED BY DEFENDANTS, DESPITE DEFENDANTS ADMITTING LIABILITY FOR DAMAGES THROUGH THE DEFAULT JUDGMENT.**

**{¶23}** Appellants contend Appellees admitted all facts and claims in its complaint based on the trial court's granting of default judgment in their favor. Appellants conclude that Appellees have therefore admitted the following: ZPC failed to perform in a workmanlike manner; columns in the basement were not installed square to the surrounding room; ZPC did not cover the floor upon installation and this failure caused subcontractors to damage the floor when they entered the house with work boots covered with mud and debris; ZPC failed to insulate the lower terrace level properly; and ZPC installed "windows, trim package, front doors and the garage door" that were not the types agreed upon in the construction contract.

**{¶24}** Appellants conclude that since Appellees admitted these facts by default, the trial court erred by analyzing whether Appellees were liable for the items contained in Exhibit Z, which was presented at the damages hearing. Exhibit Z is the estimate from SFC Construction, LLC. The owner of SFC Construction, LLC is Appellants' expert, Sam Fortney. He outlined projected costs for restorations and repairs of the home, including

Case No. 25 MA 0045

$6,000 for purchasing and installing the wrong garage doors; $7,500 for the purchase and installation of the wrong exterior doors; $19,742 for removing and replacing flooring Appellees damaged; and $16,700 for repair work on the columns and insulation in the basement. Appellants submit the complaint and Appellees' defaulted admissions belie the trial court's finding that "it is unclear what portions of the project need remedied as a result of the defendants' negligence."

**{¶25}** Appellant's first assignment of error lacks merit. A trial court possesses discretion to impose a default judgment as a discovery sanction. Civ.R. 37(B)(1)(f). *Bd. of Trumbull Twp. Trustees v. Rickard*, 2017-Ohio-8143, ¶ 55 (11th Dist.). The granting of default judgment here is not challenged in this appeal.

**{¶26}** This case concerns the trial court's ruling on the parties' objections to the magistrate's decision and its modification of that decision. The trial court applies a de novo standard of review in ruling on objections to a magistrate's decision. *Craig v. Athey*, 2025-Ohio-336, ¶ 22 (7th Dist.), citing *Calhoun v. Calhoun*, 2021-Ohio-4551, ¶ 14 (7th Dist.). Civ.R. 53(D)(4)(d) provides that in ruling on objections to a magistrate's decision, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

**{¶27}** We apply an abuse of discretion standard of review to the trial court's decision to adopt, modify, or reject a magistrate's decision. *Athey* at ¶ 22. "Abuse of discretion" connotes the trial court's judgment was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶28}** It is noted that Civ.R. 55(A) provides discretion to the trial court to hold a hearing on damages. *Nationwide Mut. Fire Ins. Co. v. Barrett*, 2008-Ohio-6588, ¶ 26 (7th Dist.). Civ.R. 55(A) states in relevant part that:

> [i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties.

Case No. 25 MA 0045

**{¶29}** A damages hearing is not necessary when the "'damages claim is 'liquidated' or based on a readily ascertainable amount, such as an account.'" *Bishop v. Bishop,* 2025-Ohio-289, ¶ 39 (7th Dist.) (citations omitted).  Liquidated damages are those "'that can be determined with exactness from the agreement between the parties or by arithmetical process or by the application of definite rules of law.'" *Id.*, quoting *Clark v. Enchanted Hills Comm. Assn.*, 2020-Ohio-553, ¶ 11 (4th Dist.) (quoting *Huo Chin Yin v. Amino Prods. Co.*, 141 Ohio St. 21, 29 (1943)).

**{¶30}** A court commits reversible error if a judgment is not liquidated and it enters default judgment without holding a hearing.  *Hull v. Clem D's Auto Sales*, 2012-Ohio-629, ¶ 7 (2d Dist.).  In such circumstances, "[b]efore a money judgment may be awarded, the plaintiff must establish evidence of the damages." *Brooks v. RKUK, Inc.*, 2022-Ohio-266, ¶ 55 (5th Dist.).  Trial courts typically hold a hearing on damages after granting a default judgment. *Falcon Drilling Co., LLC v. Omni Energy Grp.*, LLC, 2024-Ohio-2558, ¶ 85 (7th Dist.), citing *Farmer v. PNC Bank, N.A.*, 2017-Ohio-4203, ¶ 46 (2d Dist.).

**{¶31}** Appellants' damages in this case are not liquidated.  While they have a construction contract with ZPC, Appellants also allege they paid out-of-pocket costs to complete the construction of their home upon terminating ZPC.  Appellants also attached exhibits to their complaint which they alleged represented costs for "corrective" work completed by other contractors, and estimates for additional "corrective" work not yet performed.  Accordingly, this is not an account or the type of damages otherwise readily ascertainable through only the four corners of the construction contract.

**{¶32}** Accordingly, the trial court did not err by holding a damages hearing.  The trial court is given discretion to do so and damages in this case were not readily ascertainable so that a hearing was not necessary.

**{¶33}** While the granting of default judgment constitutes an admission to liability, this is separate from the court's inquiry into the proper amount of damages to award. *Bank of America, N.A. v. Goetz,* 2020-Ohio-3751, ¶ 9 (6th Dist.), quoting *Reinbolt v. Kern*, 2009-Ohio-3492, ¶ 27 (6th Dist.) ("even though a party defaults and admits the allegations of the complaint, the plaintiff must still establish his damages.").  Thus, granting default judgment does not necessarily lead to automatic damages. *See Smith v. Perkins*, 2024-Ohio-1419, ¶ 38 (3d Dist.), quoting *Brooks*, 2022-Ohio-266, at ¶ 55 (5th Dist.) ("before a

money judgment may be awarded, the plaintiff must establish evidence of the damages.").

**{¶34}** As to the damages awarded, we conduct a de novo review in determining whether a damage award issued pursuant to default judgment complies with Civ.R. 54 and Civ.R. 55. *State ex rel. DeWine v. A & L Salvage*, 2013-Ohio-664, ¶ 18 (7th Dist.) Civ.R. 55(C) provides that "[i]n all cases a judgment by default is subject to the limitations of Rule 54(C)." Civ.R. 54(C) provides, "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."

**{¶35}** The trier of fact assesses damages and "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Sailors v. Pacheco*, 2021-Ohio-3180, ¶ 46 (11th Dist.), quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. In determining whether the trial court's judgment is against the manifest weight of the evidence, we afford a presumption that the trier of fact's findings are correct. *Sailors* at ¶ 46, *citing Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 79-80 (1984). "The weight to be given the evidence as well as the credibility of the witnesses are primarily for the trier of fact." *Sailors* at ¶ 46, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

**{¶36}** We note that despite a two-day damages hearing that occurred on August 23, 2024 and January 16, 2025, Appellants ordered a transcript only of the latter hearing. The general rule is that we presume the validity of the lower court's proceedings and affirm that judgment when portions of the transcript are omitted from the record and they are necessary to resolve assigned errors. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Further, App.R. 9(B)(1) states that, "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record . . . are transcribed." App.R. 9(B)(4) requires "a transcript of proceedings that includes all evidence relevant to the findings or conclusion" when an "appellant intends to present an assignment of error on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence."

**{¶37}** Neither party mentions the first hearing in their briefs. Further, counsel for Appellants stated at the appellate hearing that no significant information from the first

hearing is at issue in this appeal. Whether submitting the transcript of the first hearing would have made a difference is not discernable.

{¶38} In any event, the January 16, 2025 transcript contains no discussion of the garage doors or the exterior doors. The magistrate and the trial court referred to Appellants' Exhibits P and Q in their decisions. These Exhibits are each identified as "Door" and merely state a cost of $413.12 each. The Exhibits are order details for what appear to be exterior doors, and they both state that the "Order Pickup Delegate" is Appellant D'Amico. They also state the billing address for Appellant Culler and her email address. (*See* Exhibits P, Q). Further, the construction contract specified the particular doors, but Appellants presented no documentation of the cost of the garage doors and exterior doors installed compared to the garage doors and exterior doors specified in the contract.

{¶39} While Appellants assert that Mr. Fortney discussed these doors in his expert report, he did not. Further, the magistrate did not discuss the garage doors in her decision, and only identified the exterior doors as Exhibits P and Q. Moreover, while the trial court stated that Appellants' objections to the magistrate's decision included the failure to award damages for the doors, the trial court did not discuss any of the doors.

{¶40} Notwithstanding, it is clear that both the magistrate and the trial court declined to award damages estimated by SFC Construction in Exhibit Z. That estimate included $6,000 and $7,500, respectively, for removal of the installed garage doors and exterior doors and the replacements of those doors with the doors specified in the construction contract.

{¶41} The trial court agreed with the magistrate that it would not award any damages from Exhibit Z because Appellants failed to prove that the repairs "were necessary and/or caused by the negligence of defendants." This is not a liability determination, as Appellants assert. Rather, the trial court endeavored to estimate the proper amount of damages to attribute to ZPC. Without support in the record for the costs of the doors identified in the contract or the cost of the door installed, the trial court did not err by failing to award damages for these items. Appellants did not meet their burden of establishing damages as to these doors.

{¶42}   The trial court did address the flooring, pocket doors, and basement work, which Appellants also complain about on appeal.  The court cited Mr. Fortney's testimony that while general contractors usually perform a final walk-through with clients to discuss any issues, Appellees were not afforded this opportunity to rectify issues because they were terminated from the job before its completion.  The court further found that while Mr. Fortney walked on the floors and observed soft spots and squeaking due to poorly installed substrate, he could not inspect the subfloors as they were covered by the flooring that was already installed.  Mr. Fortney also acknowledged that governmental entities and inspectors were required to inspect the framing before the project could proceed on the flooring.   He also testified that issues other than performance in an unworkmanlike manner can cause soft spots and squeaking of floors, such as moisture issues and the settling of the house.

{¶43}   The court also addressed the scratches and gouges in the flooring, which Appellants attributed to Appellees.  Appellants complained Appellees were required to cover the floors upon installation so that they would not be damaged.  The court noted that while Mr. Fortney observed scratches and gouges in the floors upon his walk-through of the home, he could not conclude Appellees caused the scratches or gouging because construction activities with other subcontractors continued at the house after Appellees were terminated from the job.  The court also noted Mr. Fortney's acknowledgment that he did not take some of the photographs he submitted with his report and those photographs were not time-stamped.

{¶44}   Concerning pocket doors that Appellants also complained about, the court cited Mr. Fortney's opinion that they were installed incorrectly.  However, the court cited Mr. Fortney's acknowledgement that the photographs he relied upon were not time-stamped and Appellees had no opportunity to rectify problems with the doors because they were terminated prior to completion of the job or a final walk-through.

{¶45}   Regarding the trial court's failure to award Appellants $16,700 for work in the basement, Appellants assert Appellees failed to insulate the walls and failed to build out columns square to the surrounding room.  Even if Appellees admitted this through default, Mr. Fortney's report did not mention the columns and merely identified the lack of basement wall insulation as one of numerous items that Appellants contracted for and

did not receive. The report fails to provide any information about the basement wall insulation or columns. In addition, Mr. Fortney provided no testimony concerning these items. Exhibit K shows a proposal from Boak and Sons for insulation in the basement, but no testimony established whether insulation was actually installed. Without further information establishing their damages, the trial court correctly declined to award said damages.

{¶46} For these reasons, we affirm the trial court's decision. Competent, credible evidence supports the trial court's determinations that Appellants were not entitled to the damages for the flooring, pocket doors, and basement work. As to the garage doors and exterior doors, we find Appellants failed to present any evidence establishing the costs for these items.

{¶47} Accordingly, we find that Appellants' first assignment of error lacks merit and is overruled.

{¶48} In their second assignment of error, Appellants assert:

**THE TRIAL COURT ERRED WHEN IT ARBITRARILY AND UNREASONABLY LIMITED THE AMOUNT OF PUNITIVE DAMAGES APPORTIONED TO DEFENDANT CHARLES ZIDIAN BY THE MAGISTRATE IN THE MAGISTRATE'S DECISION CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

{¶49} Appellants contend the trial court erred by reducing the magistrate's award of punitive damages in the amount of $118,361.79 to $1. They submit that no basis exists for this reduction and they did not object to the magistrate's award of punitive damages. They assert they objected only to the joint and several liability finding of the magistrate.

{¶50} Appellants submit that Zidian admitted committing fraud by signing Appellant D'Amico's signature on a construction draw request, which resulted in Premier releasing payments and disbursements to ZPC. Appellants further note they were unable to depose Zidian because he failed to comply with the magistrate's order compelling discovery. They request that we "reinstate the Magistrate's Decision to punish Charles Zidian by making him jointly and severally liable for the damages caused by ZPC in this case."

Case No. 25 MA 0045

**{¶51}** Appellants misread the magistrate's decision on punitive damages. The magistrate awarded punitive damages in the amount of $1, the same as the trial court. The magistrate did not award punitive damages in the amount of $118,361.79. Since the trial court awarded the same punitive damages amount as the magistrate awarded, Appellants' assertion that the trial court abused its discretion in modifying the magistrate's punitive damages award has no merit.

**{¶52}** However, Appellants correctly note the magistrate entered judgment for the total amount of $118,361.79 plus interest against Zidian and ZPC, jointly and severally, while the trial court awarded Appellants $89,662.50 in compensatory damages for breach of contract, $10,000 for violations of the HCSSA against Zidian, and $28,047.43 in attorney fees against both Zidian and ZPC jointly and severally.

**{¶53}** Appellants contend we should re-impose joint and several liability against Zidian for all damages as found by the magistrate to punish Zidian and deter fraud. They submit the magistrate correctly found fraud intertwined with the home construction and thus Zidian should be punished with more than just $1 in punitive damages and half of Appellants' attorney fees.

**{¶54}** We apply an abuse of discretion standard of review to the trial court's decision to modify, affirm, or reverse a magistrate's decision. *Marafiote v. Estate of Marafiote*, 2016-Ohio-4809, ¶ 29 (7th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). Thus, we review whether the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶55}** Civ.R. 53(D)(4)(d) requires, "[i]n ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." In determining whether a trial court conducted this independent review, we "'generally presume regularity in the proceedings below, and, therefore, we generally presume that the trial court conducted its independent analysis in reviewing the magistrate's decision.'" *Marafiote* at ¶ 30, quoting *Mahlerwein v. Mahlerwein*, 2005-Ohio-1835, ¶ 47 (4th Dist.). Accordingly, the party contending that the trial court failed to conduct the independent review must affirmatively demonstrate that the trial court failed to perform this duty. *Id*.

**{¶56}** We find no abuse of discretion by the trial court. The trial court reviewed the parties' objections in its judgment entry and stated that it had considered the facts in evidence, the magistrate's decision, and it had conducted an independent review. The trial court adopted the magistrate's findings of fact and conclusions of law, except it added to the attorney fees award based on the reconvening of the damages hearing. The trial court also modified the joint and several liability imposed by the magistrate.

**{¶57}** The trial court was not required to adopt the magistrate's imposition of joint and several liability on Zidian for the compensatory damages. Civ.R. 53(D)(4)(b) "permits the modification of the magistrate's decision on the basis of the trial court's own review and determination." *Donofrio v. Whitman*, 2010-Ohio-6406, ¶ 24. While the trial court did not explain its reasons for modifying the joint and several liability, it is clear that the court performed an independent review of the evidence and the magistrate's decision. Further, while it would be better practice to do so, a trial court is not required to cite to materials in the record to show it conducted an independent review. *Guthrie v. Guthrie,* 2024-Ohio-5581, ¶ 19, citing *In re A.M.*, 2020-Ohio-5102, ¶ 39 (citation omitted). Accordingly, the trial court did not abuse its discretion by failing to impose joint and several liability for all damages on Zidian.

**{¶58}** Moreover, members of a limited liability company are generally not liable for the company's debts, obligations, or liabilities. R.C. 1706.26. A LLC's member may be held personally liable if three elements are met: (1) the member has complete control over the LLC so that the LLC is not separate from the member; (2) the member exercised control over the LLC to commit fraud or an illegal act against the plaintiff; and (3) the control and acts proximately caused the plaintiff's injury or unjust loss. *Best Fin. Solutions, LLC v. Tifton Custom Packing, LLC,* 2024-Ohio-4458, ¶ 40 (1st Dist.) citing *Dombroski v. WellPoint*, 2008-Ohio-4827, ¶ 18.

**{¶59}** The trial court did not err by failing to impose joint and several liability for all damages on Zidian. Not only does the trial court have the discretion to modify the magistrate's decision upon independent review, there is no evidence Zidian had complete control over ZPC such that ZPC was not separate from him. Zidian signed the construction contract as Contractor ZPC by Zidian, the construction contract was between ZPC and Appellants, and no assertion was made that Zidian had complete control over

the company so that it was not separate from him as a member. Appellants did not attempt to pierce the corporate veil.

{¶60} As to damages awarded under the HCSSA, Zidian does not meet the definition of a "home construction service supplier" under that statute. A "home construction service supplier" is defined as "a person who contracts with an owner to provide home construction services for compensation and who maintains in force a general liability insurance policy in an amount not less than two hundred fifty thousand dollars." R.C. 4722.01(D). Zidian did not contract with Appellants and therefore does not meet this definition. *See Hanamura-Valashinas v. Transitions by Firenza, LLC*, 2020-Ohio-4888, ¶ 58, 59 (11th Dist.) (managing partner of construction company not personally liable under HCSSA for homeowners' claim even when actions of managing partner could constitute violations of HCSSA).

{¶61} Further, the complaint alleges breach of contract and HCSSA violations against ZPC and Premier only. The complaint alleges fraud only against Zidian and civil conspiracy against ZPC, Zidian, and Premier. The court agreed with the magistrate that ZPC breached the construction contract and violated the HCSSA. The magistrate and trial court found Zidian committed fraud and awarded $1 in punitive damages.

{¶62} Based on the abuse of discretion standard of review, the trial court did not act unreasonably, arbitrarily, or unconscionably by modifying the joint and several liability in the magistrate's decision.

{¶63} Accordingly, we find that Appellant's second assignment of error lacks merit and is overruled.

{¶64} For the above reasons, we affirm the trial court's decision. The granting of default judgment against Appellees does not result in automatic damages. Appellants did not present evidence establishing the value of the garage or exterior doors, and neither the magistrate nor the trial court addressed these items. Competent, credible evidence supports the trial court's rejection of SFC's estimate of repairs and replacements in Exhibit Z. Finally, contrary to Appellants' assertion, the trial court did not modify the punitive damages award against Zidian. And the court's decision to modify the magistrate's decision concerning joint and several liability is not an abuse of discretion. ZPC is identified as the party to the construction contract, Zidian signed as a company

representative, and the evidence fails to show that Zidian should be held personally liable for ZPC's contract.

Robb, J., concurs.

Dickey, J., concurs.

————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**